FIREMAN'S FUND AMERICAN INSUR-
ANCE COMPANIES and Beef &
Bourbon, Appellants,

v.

Sandra J. GOMES, wife of Raymond J.
Gomes, Jr. (Deceased), and the Alaska
Workmen's Compensation Board, Appellees.

No. 2421.

Supreme Court of Alaska.

Jan. 16, 1976.

Sanford M. Gibbs, of Hagans, Smith & Brown, Anchorage, for appellants.

Charles P. Flynn, of Burr, Pease & Kurtz, Inc., Anchorage, for appellees.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

BOOCHEVER, Chief Justice.

The bizarre murder of Raymond J. Gomes gives rise to this appeal concerning the statutory presumption of compensability contained in the Alaska Workmen's Compensation Act. Gomes' employer, Beef & Bourbon, and its insurance carrier, Fireman's Fund American Insurance Companies (hereinafter collectively referred to as "the employer"), seek reversal of the superior court's affirmance of the Alaska Workmen's Compensation Board's finding of compensability.[1] The employer contends there was substantial evidence to overcome the statutory presumption of AS 23.30.120(1) that Raymond Gomes' death was related to his employment.

In the early morning of July 11, 1972, Raymond J. Gomes, Jr. was shot and killed at the Beef & Bourbon Restaurant in Anchorage where he was employed as a bartender.[2] In addition to tending bar, Gomes' duties included attending to banking; ordering liquor; and dealing with food, liquor and other suppliers. The restaurant had just closed for the night, and Mr. Gomes was cleaning up behind the bar area when an unknown assailant broke open the door. The only other people in the restaurant at the time were the cook, who was also killed in the attack, and Sandra Gomes, appellee and widow of the deceased. When the door was being broken in, Mrs. Gomes dove under a table in the back of the restaurant and caught only a glimpse of a man with a weapon. When Mrs. Gomes emerged from her hiding place several minutes later, her husband and the cook were dead, and the assailant had departed. No words had been spoken during the attack, and no money was taken.

The Anchorage Police Department undertook an extensive investigation of the murders. At the hearing before the Workmen's Compensation Board on April 4, 1973, the employer presented as its witness Inspector Ronald J. Rice, officer in charge of the investigation. Rice testified that there was no evidence to substantiate any presumption that the death was motivated by robbery, by an irate customer, by reason of a love triangle, or by mistaken identity. The police had investigated the possibility of the involvement of organized crime and narcotics, but to no avail. From the details of the shooting and the method employed by the killer,[3] Rice opined that Gomes was the victim of a planned "execution" that would have been carried out no matter where he was found, and not because Gomes was the bartender on duty at the Beef & Bourbon at that particular time. Officer Rice admitted, however, that he did not know why Gomes was killed.

The Alaska Workmen's Compensation Board held that Officer Rice's testimony did not constitute substantial evidence to overcome the presumption of coverage set forth in AS 23.30.120(1) as follows:

> In a proceeding for enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that
>
> (1) the claim comes within the provisions of this chapter;

Since Gomes was killed while at work, the Board properly read AS 23.30.120(1) as requiring a presumption that the killing was related to his employment. Although Officer Rice gave his opinion that Gomes was

---

1. We note that an inordinately long time, 18 months, elapsed between the filing of appellants' complaint and the issuance of the superior court's memorandum decision.

2. He was also the owner of a two-thirds interest in the business.

3. The assailant used a shotgun; no words were exchanged; no money was taken; the assailant would have known that Raymond Gomes was there after closing because he usually stayed late and his car was outside, but he might not have expected to find Sandra Gomes or the cook.

intentionally killed by a hired assassin, he could not explain the reasons for the killing. Since Rice offered the only evidence for the employer, the Board concluded that there was no substantial evidence to overcome that presumption of compensability. The superior court affirmed the Board's award.

At the core of this appeal is the question of what effect is to be given to the statutory presumption that a claim for compensation comes within the provisions of the statute in the absence of substantial evidence to the contrary.[4] We have held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] The question of whether the quantum of evidence is substantial is a legal question.[6] Therefore, we must independently review the evidence to determine whether the Board erred in concluding that there was no substantial evidence to overcome the presumption of compensability.[7]

■ In *Anchorage Roofing Co., Inc. v. Gonzales,* 507 P.2d 501 (Alaska 1973), we were confronted with a similar question as to the operation of the statutory presumption in AS 23.30.120(1). In that case, Gonzales was employed by Anchorage Roofing Co. and was flying to Homer, Alaska for the purpose of repairing a roof when the plane, piloted by him, crashed near Lake Tustemena. While enroute to Homer, Mr. Gonzales intended to survey the terrain around the lake for a landing strip to be used in a future hunting trip. We held that the employer had the burden of going forward with the evidence on the issue of whether the injury arose outside the scope of employment, but that once substantial evidence is introduced, the presumption drops out, and the burden of proving all elements of the claim falls on the plaintiff.[8] The employer produced substantial evidence in *Anchorage Roofing* to indicate that the crash was not work-related, but instead was due to an independent personal purpose. The claimant then had to assume the burden of proving his claim, and we found that he met this burden of proof by showing that the primary purpose for the trip was the roofing work, and that the deviation was not substantial.

Here, we are confronted with the threshold question of whether substantial evidence was introduced by the employer so as to thrust the burden on the claimant. Here the claimant did not otherwise come forward with evidence to establish that Gomes' death arose out of his employment.

■ At most, Officer Rice's testimony may be considered as evidence establishing a likelihood that Gomes was killed by some-

---

4. AS 23.30.120(1).

5. *Thornton v. Alaska Workmen's Compensation Board,* 411 P.2d 209, 210 (Alaska 1966), quoted in *Alaska State Housing Authority v. Sullivan,* 518 P.2d 759, 760–61 (Alaska 1974), and *Anchorage Roofing Co., Inc. v. Gonzales,* 507 P.2d 501, 503 (Alaska 1973).

6. 3 Larsen, Workmen's Compensation Law, § 80.10 at 245–48. This is not a situation where the Board makes a finding of fact. If supported by substantial evidence, we uphold the Board's factual findings and will not weigh the evidence. *Alaska State Housing Authority v. Sullivan,* 518 P.2d 759, 760 (Alaska 1974); *Interior Paint Co. v. Rodgers,* 522 P.2d 164, 169–70 (Alaska 1974); *Anderson v. Employers Liability Assurance Corp.,* 498 P.2d 288, 289–90 (Alaska 1972); *Wilson v. Erickson,* 477 P.2d 998, 999 (Alaska 1970); *Cook v. Alaska Workmen's Compen-*

*sation Board,* 476 P.2d 29, 32 (Alaska 1970); *Morrison-Knudsen Co. v. Vereen,* 414 P.2d 536, 542–43 (Alaska 1966); *Keiner v. City of Anchorage,* 378 P.2d 406, 411 (Alaska 1963).

7. While we have required that prior to our review, the superior court first review questions of sufficiency of evidence to support a Board's award, *Employers Commercial Union Ins. Group v. Schoen,* 519 P.2d 819, 825 (Alaska 1974), we must independently review the evidence to determine whether it is legally sufficient. *W. R. Grasle Co. v. Alaska Workmen's Compensation Board,* 517 P.2d 999, 1003 (Alaska 1974); *Hewing v. Alaska Workmen's Compensation Board,* 512 P.2d 896, 898 (Alaska 1973).

8. *See Del Vecchio v. Bowers,* 296 U.S. 280, 286–87, 56 S.Ct. 190, 80 L.Ed. 229, 232–33 (1935).

one who was deliberately endeavoring to kill him. Accepting that evidence as being competent, despite its somewhat conjectural and speculative nature, we still must ascertain whether it is such that "a reasonable mind might accept as adequate to support a conclusion";[9] the conclusion here being that Gomes' death was not related to his employment. That he, as opposed to any other employee, was deliberately killed does not support the conclusion that he was not killed because of his employment. Officer Rice could point to no facts which indicated that the motive for the slaying was not connected with Gomes' employment. In short, all the evidence which could possibly support the conclusion that the death was not work-connected could just as easily support the conclusion that it was.

■ There are two means by which the presumption of compensability could be overcome. One is by affirmative evidence indicating that the killing was not work-connected. The other is by eliminating all reasonable possibilities that the killing was work-connected. Examples of affirmative evidence indicating that the death was unrelated to employment would be evidence that he was shot because of involvement in a love triangle, because of some hazardous nonwork-connected endeavor such as the narcotics trade or evidence that he had voluntarily and wilfully committed suicide.[10] Here it is clear that no affirmative evidence was produced indicating that Gomes' killing was due to nonwork-related causes. This left the employer with the infinitely more difficult task of eliminating all reasonable hypotheses that the killing was work-related.

Our review of the testimony of Officer Rice leads us to the conclusion that a reasonable mind would not accept it as adequate to support the elimination of probabilities that the death was work-connected. It is possible that a reasonable mind might accept the evidence of failure to take money from the bar as evidence that robbery was not a motive. The one customer whose car was found at the scene of the crime was investigated and eliminated as the perpetrator of the crime. Even though inquiries may have been made pertaining to customers' grudges, such inquiries did not eliminate the possibility of some customer having a real or imagined slight leading to the shooting.[11] Among other possibilities of work-related causes of the shooting which the testimony did not eliminate were that the shooting could have been caused by a competitor, by one extorting "protection" payments or by a disgruntled supplier whose goods were not purchased.

We agree with the Board's statement that:

> Gomes was on duty at the time he was shot, and the reason he was shot has not been determined. One could assume he was shot for any number of reasons which could be either related or unrelated to his employment, but the fact is that the question of *why* he was shot remains unanswered.

■ In the absence of affirmative evidence indicating the cause of Gomes' death, we cannot say that the Board erred in holding that the presumption was not overcome. In fact, this would appear to be the classical type of case where the presumption should apply.

9. *See* note 5, *supra.*

10. *See*, for example, *Del Vecchio v. Bowers*, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229 (1935); *Oberlander's Case*, 348 Mass. 1, 200 N.E.2d 268 (1964); *Lehman v. A. V. Winterer Co.*, 272 Minn. 79, 136 N.W.2d 649 (1965); *Baltimore & Ohio R. Co. v. Brooks*, 158 Md. 149, 148 A. 276 (1930); *Mershon v.*

*Mo. Public Service Corp.*, 359 Mo. 257, 221 S.W.2d 165 (1949); *Seal v. Effrom Fuel Oil Co.*, 284 App.Div. 795, 135 N.Y.S.2d 231 (1954).

11. For an example of a slighted customer endeavoring to bomb a bar, see *Spearman v. State*, 543 P.2d 202 (Alaska 1975).

Professor Larsen in his authoritative treatise on workmen's compensation law discusses unexplained assaults which occur while the victims are discharging their duties as employees:

> Occasionally an assault occurs for which no explanation whatever appears, either because the assault was unwitnessed, or because, even with all the facts available, no one can figure out why the assault was committed. Nothing connects it with the victim privately; neither can it be shown to have had a specific employment origin. If the claimant is in fact exposed to that assault because he is discharging his duties at the time and place, there is no better reason here than in the unexplained-fall or death cases to deny an award merely because claimant cannot positively show that the assault was motivated by something connected with the work. Although the cases are more evenly divided on unexplained assaults than on unexplained falls or deaths, there is now a demonstrably larger body of authority for awarding compensation on these facts than for denying it. 1 Larson, *The Law of Workmen's Compensation*, § 11.33 at 3–199–200 (1972). (footnotes omitted)

■ The present case is somewhat analogous to *Employers Commercial Union Co. v. Libor*, 536 P.2d 129 (Alaska 1975), although an unexplained death was not there involved. In *Libor*, the question was presented as to whether a work-related back injury was the cause of a subsequently discovered herniated disc which required surgery. One doctor testified that he could see no reason why there could not be a relationship between the original injury and the subsequent disability, but it would be impossible for him to make the causal connection. Another stated that in his opinion the original accident "cannot, with a reasonable degree of medical certainty, be said to be either the cause of or to have precipitated [the] herniated disc". That doctor, thus, could not find a basis for an opinion that the disability was work-related. Nevertheless, he gave no opinion that it was not work-related. Under those circumstances, we held that the presumption contained in AS 23.30.120(1), that the claim was within the act, was not overcome. The mere inability to state that the disability was work-related did not constitute substantive evidence.

■ In the instant case, accepting Officer Rice's opinion testimony that Gomes was the target of a planned attack, we are left with an unexplained motive for the killing. This is precisely the type of situation where the presumption of AS 23.30.-120(1) should operate: no motive has been found; no one knows why the assault was committed; no plausible explanation showing the lack of employment connection has been suggested.[12] To deny an award in this situation would frustrate the humanitarian purposes of the Workmen's Compensation Act.[13]

Affirmed.

---

12. The employer contends that the superior court did not reach its conclusion affirming the Board on a proper basis arguing that the superior court independently reviewed the evidence. We do not address this question as it is immaterial whether the superior court set forth the proper rationale for its decision affirming the decision of the Workmen's Compensation Board. Upon appeal, a correct decision of the superior court will be affirmed regardless of whether we agree with the reasons advanced. *Carter v. Winter*, 32 Ill.2d 275, 204 N.E.2d 755, *cert. denied*, 382 U.S. 825, 86 S.Ct. 56, 15 L.Ed.2d 70 (1965). *See Ransom v. Haner*, 362 P.2d 282 (Alaska 1961), for the same reasoning applied to appellate review of a trial court's decision. *See also J. E. Riley Invest. Co. v. Commissioner of Internal Revenue*, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36 (1940); *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *Lum Wan v. Esperdy*, 321 F.2d 123 (2nd Cir. 1963).

13. *See Beauchamp v. Employers Liability Assurance Corp.*, 477 P.2d 993, 997 n. 12 (Alaska 1970) and *Thornton v. Alaska Workmen's Compensation Board*, 411 P.2d 209, 211 n. 7 (Alaska 1966), that any doubts as to the substance of medical testimony must be resolved in favor of the claimant.

**1018**

ERWIN, J., dissenting.

ERWIN, Justice (dissenting).

I dissent.

I disagree with the conclusion of the majority that the evidence presented on behalf of the employer was not substantial evidence which would cause the presumption to disappear.

The definition of substantial evidence found in *Anchorage Roofing Co., Inc. v. Gonzales*, 507 P.2d 501, 503 (Alaska 1973), is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

To me the testimony by Officer Rice concerning the exhaustive investigation into the murder by the Anchorage Police Department and his expert opinion that it was a non-job related, professional-contract killing can only be described as evidence adequate to support a conclusion.

While I have never been able to explain a finding by an appellate court stating that reasonable minds cannot differ on a particular question when a reasonable judge dissents as to that view, such is the case herein. I would reach the opposite conclusion and would reverse the decision of the superior court and remand the case to them with instructions to order the Workmen's Compensation Board to dismiss the claim.[1]

---

[1]. The majority notation of inordinate delay herein is an understatement which underscores the need for the revamping of procedures in the Superior Court for the handling of administrative appeals. The delay of almost one year in scheduling oral argument caused the parties to ultimately stipulate to the waiver of argument in order to obtain a decision on the appeal. Appellate Rule 45 should be changed to require oral argument after 30 days of the receipt of the legal briefs in the case. Such delays can only cause undue hardships to litigants and justified criticism to the court.