**VECO, INC., Appellant,**

v.

**Donald WOLFER and Home Insurance Company, Appellees.**

No. 7205.

Supreme Court of Alaska.

Jan. 25, 1985.

---

Phillip J. Eide, Ely, Guess & Rudd, Anchorage, for appellant.

William M. Erwin, Anchorage, for appellee Donald Wolfer.

Marilyn J. Kamm, Lane, Powell, Barker & Hicks, Anchorage, for appellee Home Ins. Co.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

### INTRODUCTION

This appeal involves a dispute between an insurance carrier and a company it for-

merly insured over which of them will pay workers' compensation benefits to Donald Wolfer. The carrier provided workers' compensation insurance to Wolfer's employer when he was originally injured in 1979. Wolfer allegedly aggravated his injury in 1980 while working for his employer, then self-insured.

FACTS

Veco, Inc. (Veco) employed Donald Wolfer as a carpenter and heavy machinery operator at Prudhoe Bay in 1979. Wolfer injured his back on December 20, 1979, when he slipped and fell on the ice outside the carpenter's shop at the ARCO base camp. After the fall, Wolfer suffered extreme pain in his lower back, was unable to work, and returned home to Kenai on a regular tour of rest on December 23, 1979. At the time of Wolfer's injury, Home Insurance Company (Home) carried Veco's workers' compensation insurance.

Wolfer's back pain subsided during his two week stay in Kenai. However, his back began to bother him again when he returned to the North Slope in January 1980, especially when he was required to do heavy lifting. As a result, he was evacuated to Anchorage on February 13, 1980, where Declan Nolan, M.D., an orthopedic surgeon, diagnosed lumbar disc syndrome, recommended bed rest, and prescribed physical therapy. Dr. Nolan treated him from February 19, 1980 until March 20, 1980.

After three physicians recommended that Wolfer be released for work in March 1980, he began work in Veco's Anchorage yard on May 23, 1980, operating heavy machinery and doing mechanical work. Wolfer testified that during the summer of 1980, he continued to suffer intermittent flare-ups of back and neck pain, especially after operating heavy equipment for long hours.

After a temporary layoff in September, Wolfer returned to work for Veco on October 23, 1980. He testified that his duties this time involved some heavy work but mostly supervision of a yard crew. On October 26, 1980, while tightening an overhead bolt on a hydraulic transporter, Wolfer felt pain and numbness throughout his right side, lost strength in his right arm and leg and collapsed to the ground after losing motor control. Wolfer left work immediately and filed a Report of Occupational Injury or Illness the next day, in which he stated:

> Tightening a 2½ bolt on transporter and pulled something in my back. Happens of [sic] and on every so often under hard labor since December 20/79.

Veco was self-insured for its workers' compensation liability at the time of the October 1980 incident.

Wolfer returned to work again on October 28, 1980 and continued working until he was laid off on November 27, 1980. He testified that after the October 1980 incident his back pain was much worse and he did no more heavy labor.

After he was laid off in November 1980, Wolfer moved to Hawaii where he experienced back pain after swimming on December 4, 1980. He consulted James E. Baum, D.O., who referred him to George Siu, M.D., a neurologist. Wolfer mentioned only the December 1979 fall in relating his medical history to Dr. Baum and Dr. Siu. Both physicians believed that Wolfer's description of his December 1979 fall was consistent with his chronic back condition.

Wolfer filed a claim for disability benefits on December 22, 1980. The Alaska Workers' Compensation Board held a hearing on Wolfer's claim and on November 10, 1981, issued a written decision and order, directing Home to pay temporary total disability compensation to Wolfer from February 13, 1980 to March 20, 1980. The board concluded that Wolfer had established a preliminary link between his employment in December 1979 and his initial disability, and applied the presumption of compensability against Home. The board found, however, that Home had produced substantial evidence that Wolfer was not totally disabled after March 20, 1980, and rejected Wolfer's claim for benefits through May, 1980.

The board also concluded that Wolfer had established preliminary links between both the December 1979 and October 1980 injuries and his subsequent disability in November 1980. It concluded that neither Home nor Veco produced substantial evidence to rebut the presumption that each incident was a substantial factor in causing Wolfer's disability. Applying the last injurious exposure rule, the board found Veco liable for all benefits to be paid to Wolfer after November 28, 1980.

On December 8, 1981, Veco appealed the board's decision to the superior court, claiming that Home should be liable for benefits to be paid during the second period of disability. The superior court affirmed the board's ruling. We now reverse.

## DISCUSSION

### I. *The Presumption of Compensability*

■ Veco argues that the presumption of compensability should not apply to a dispute between an insurance carrier and its former insured. In *Ketchikan Gateway Borough v. Saling,* 604 P.2d 590 (Alaska 1979), we applied the presumption of compensability and the last injurious exposure rule to a dispute between two employers.[1] We recognized that applying both the presumption and the last injurious exposure rule to disputes involving successive employers might be inequitable to subsequent employers in some cases. 604 P.2d at 598. Nevertheless, we believed that the advantages of applying both the presumption and the rule outweighed the disadvantages. We also recognized the

mitigating effect of AS 23.30.205, the second injury fund.[2]

In *Providence Washington Insurance Co. v. Bonner,* 680 P.2d 96 (Alaska 1984), we extended the *Saling* rationale and applied the presumption of compensability to a dispute between successive insurance companies. Justice Rabinowitz noted in concurrence, "The rule adopted today will simplify proceedings before the board and thus reduce the hazards inter-insurer disputes pose for the injured worker." *Bonner,* 680 P.2d at 100 (Rabinowitz, J. concurring). Veco's attempt to distinguish this case from *Bonner* is unpersuasive.

We are not presented with the case in which application of both the presumption and the rule would leave an injured employee uncompensated. As a self-insured employer in October 1980, Veco was required to prove its financial ability to pay compensation directly. AS 23.30.075(a). Nor is this a case in which the unwary insured was surprised by an ambiguous or opaque policy exclusion. In fact, we see no reason why Veco should not be treated as a subsequent insurer in this case.

Moreover, applying the presumption and the rule to a dispute between a carrier and its former insured has two advantages. First, they establish a clear standard for determining liability for a formerly disabled employee's subsequent disability. This helps insurance carriers and employers alike to estimate the risks assumed by each. As Justice Rabinowitz noted, it also reduces the hazards posed by inter-insurer disputes to injured workers. Second, this

---

1. The presumption of compensability is found in AS 23.30.120:

    In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that

    (1) the claim comes within the provisions of this chapter; ...

    The last injurious exposure rule applies when employment with successive employers has contributed to an employee's disability. It imposes full liability on the employer at the time of the most recent injury that bears a causal relation to the disability. 4 Larson, Workmen's Compensation Law § 95.12 (1984).

2. The second injury fund was established by AS 23.30.205 to encourage employers to hire handicapped or previously disabled employees. The fund reimburses employers for all but the first two years of benefits paid to a qualified previously impaired employee who suffers a subsequent disability. A qualified employee is one who has a "permanent physical impairment" including those listed in paragraph (d)(1) or (d)(2) of the statute. All the statute requires is that the employer provide a written record establishing (1) his knowledge of the impairment before the second injury occurred; and (2) that the employee was hired or retained after the employer acquired that knowledge.

avoids treating employees of a self-insured employer differently from similarly situated employees of an employer with outside insurance. If the presumption and the rule did not apply in these cases, disabled employees of a self-insured employer would likely receive lower benefits based on wages at the time of the initial disability, rather than wages at the time of the last injury. Thus, since salary usually increases over time, applying the presumption and the rule preserves equity among similarly situated employees and furthers the humanitarian goals of the Worker's Compensation Act.[3]

## II. Standard of Review

Veco's second claim is that the superior court applied the wrong standard of review in affirming the board's finding that Veco did not produce substantial evidence to rebut the presumption of compensability. Specifically, Veco objects to the following language from the decision on appeal:

> The Board's decision is reasonable, is supported by substantial evidence in the record, and is not an abuse of discretion. *Kodiak Western Alaska v. Harris Flying Service*, 592 P.2d 1200 (Alaska 1979).

If the superior court applied the *Kodiak Western Alaska* standard of review in the present case, then there was error. In *Kodiak*, which reviewed a transportation commission decision, we approved use of the "reasonable basis" standard of review.[4] We stated:

> We use the "reasonable basis" standard of review for questions involving agency expertise or fundamental policy considerations. Under this° standard deference will be given to the agency's determination so long as it is reasonable, supported

by the evidence in the record as a whole and there is no abuse of discretion. *Kodiak Western Alaska*, 592 P.2d 1200 (Alaska 1979).

Here, the board's decision involved agency expertise and is ostensibly within the rule of *Kodiak Western Alaska*. However, in workers' compensation cases, we have held that:

> The question of whether the quantum of evidence is substantial is a legal question. Therefore, we must independently review the evidence to determine whether the Board erred in concluding that there was no substantial evidence to overcome the presumption of compensability.

*Fireman's Fund American Insurance Cos. v. Gomes*, 544 P.2d 1013, 1015 (Alaska 1976). (Footnotes omitted). *See also Miller v. ITT Arctic Services*, 577 P.2d 1044, 1046 (Alaska 1978). ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support [the board's] conclusion.") Thus the court must independently examine the sufficiency of the employer's evidence when reviewing a Workers' Compensation Board determination that an employer has or has not rebutted the presumption of compensability.[5]

The presumption of compensability shifts the burden of production to the employer once the employee has established a preliminary link. Since the presumption shifts only the burden of production and not the burden of persuasion, the evidence tending to rebut the presumption should be examined by itself. The court does not weigh the evidence tending to establish causation against the rebuttal evidence in deciding whether the employer has produc-

---

**3.** Compensation benefits in Alaska are presently determined by the disabled employee's spendable weekly wage. *See* AS 23.30.220.

**4.** *Kodiak Western Alaska* involved an appeal from the transportation commission's decision that an air carrier had violated the Air Commerce Act by charging passenger fares for "reg-

ular" rather than "casual" air service between Dillingham and Togiak. The superior court reversed on the grounds that the evidence did not support the board's finding. We affirmed.

**5.** Since we must independently examine Veco's evidence, the trial court's application of the wrong standard of review is harmless error.

ed substantial evidence to rebut the presumption of compensability.[6]

When the presumption of compensability has been successfully rebutted, it drops out and the employee must prove all the elements of his case by a preponderance of the evidence. *Miller v. ITT Arctic Services*, 577 P.2d at 1046. Upon reviewing a determination that the employee has or has not met that burden, the court must apply the "substantial evidence" test set out in *Beauchamp v. Employers Liability Assurance Corp.*, 477 P.2d 993, 997 (Alaska 1970):[7]

> On review, the court may not weigh the evidence or choose between competing inferences reasonably possible from the evidence. We are limited to a determination of whether the Board's findings were supported by substantial evidence in light of the whole record.

In this case, we must decide whether Veco has rebutted the presumption of compensability. Thus we must determine whether Veco's evidence, viewed in isolation, is evidence that a reasonable mind might accept as adequate to support the board's conclusion.

### III. *The Evidence*

Veco contends that the board required it to produce expert medical evidence in order to rebut the presumption in this case. In claims based upon highly technical medical considerations, medical evidence is often necessary to make the connection between a disabled worker's employment and his disability. *Burgess Construction Co. v. Smallwood (Smallwood II)*, 623 P.2d 312, 316 (Alaska 1981). However, we have never stated that expert medical evidence is necessary to establish or rebut that connection in every case. For example, in *Beauchamp v. Employers Liability Insurance Corp.*, 477 P.2d 993 (Alaska 1970), we held

that in the absence of conclusive expert medical testimony, lay testimony was substantial evidence establishing a causal link between Beauchamp's disability and his employment.

In *Employer's Commercial Union Co. v. Libor*, 536 P.2d 129 (Alaska 1975), we reaffirmed *Beauchamp* and approved the rationale expounded by Professor Larson in his well-known treatise:

> To appraise the true degree of indispensability which should be accorded medical testimony, it is first necessary to dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis. Thus, in many instances it may be impossible to form a judgment on the relation of the employment to the injury, or the relation of the injury to the disability, without analyzing in medical terms what the injury or disease is. But this is not invariably so. In appropriate circumstances, awards may be made when medical evidence on these matters is inconclusive, indecisive, fragmentary, inconsistent, or even non-existent.

> .    .    .    .    .

> ... [T]wo underlying reasons may be discerned: The first is that lay testimony, including that of claimant himself, is of probative value in establishing such simple matters as the existence and location of pain, the sequence of events leading to the compensable condition, and the actual ability or inability of claimant to perform his work; the second is that industrial commissions generally become expert in analyzing certain uncomplicated kinds of medical facts, particularly those bearing on industrial causation, malingering, and the like.

3 Larson, *Workmen's Compensation Law*, § 79.51 at 180–81, § 79.53 at 196 (1983) (footnotes omitted).

> The approach of this Rule approximates more closely the views of Thayer and Wigmore than those of McCormick and Morgan.
> The shifting-the-burden of persuasion approach ... is rejected for several reasons....

---

**6.** The commentary to Rule 301(a) summarizes the view of presumptions adopted in Alaska:
> Other authorities, following Thayer's "bursting bubble" theory, approved by Wigmore, hold that the presumption vanishes upon the introduction of evidence that would support a finding of the non-existence of the presumed facts.

**7.** *See also Delaney v. Alaska Airlines*, 693 P.2d 859 (1985).

We held in *Libor* that the board need not always hear expert medical testimony to decide whether or not employment was a substantial factor in causing an injury. Two factors determine whether expert medical evidence is necessary in a given case: the probative value of the available lay evidence and the complexity of the medical facts involved. If lay evidence is sufficiently probative to establish causation in some cases, we see no reason why it should not also be sufficient to establish a lack of causation in appropriate circumstances.

In the instant case, the board relied solely on Wolfer's lay testimony to establish the preliminary link between his October 1980 injury and his employment by Veco in 1980. Wolfer did not produce any expert medical evidence to prove the causal connection between his employment and his October 1980 injury. The board specifically relied on Wolfer's testimony that he collapsed while tightening an overhead bolt with a wrench, and that he was subsequently unable to perform all of his job duties.

Back strain is a relatively uncomplicated and common injury and the factual situation in this case is unusually probative. Thus, the board was entitled to rely on Wolfer's testimony and evidence of the circumstances attending his alleged injury in October 1980 to establish causation. We believe that the board could also have relied on lay evidence to establish a *lack* of causation. We do not believe that the board would have been significantly better informed about the cause of Wolfer's injury had it required all parties to produce expert testimony.

Despite Veco's contention, however, the record does not clearly establish that the board relied on Veco's failure to produce expert medical testimony to conclude that Veco did not rebut the presumption of compensability. Whether or not the board so relied, we must independently review Veco's evidence to determine its sufficiency to overcome the presumption.[8]

Veco argues that Wolfer's testimony and other circumstantial evidence upon which the board "should have relied" is substantial evidence that Wolfer's employment with Veco in October 1980 was not a substantial factor in bringing about his subsequent disability. Specifically, Veco relies on the following evidence:

(1) Wolfer suffered a disabling back injury in December 1979. Wolfer testified, both in his deposition and at his hearing, that since 1979, his back bothered him recurrently whenever he engaged in manual labor.

(2) Wolfer testified that on two prior occasions (in March and April of 1980) he passed out while bending over. Wolfer related these incidents to his December 1979 injury.

(3) It is undisputed that when Wolfer's back gave out in October 1980, he was not engaged in strenuous activity and did not slip or fall.

(4) Wolfer wrote in his October 1980 Report of Occupational Injury or Illness that he had "pulled something in his back" which "happens of [sic] and on every so often under hard labor since 1979."

(5) Wolfer testified that when he returned to Veco on October 23, 1980, he worked primarily as a supervisor. Wolfer continued working after October 26, 1980, until he was laid off on November 27, 1980 because of a reduction in the work force.

(6) Dr. Baum, Wolfer's treating physician after November 1980, testified that Wolfer never mentioned the October 1980 incident when he described the medical history of his injury in December 1980. Dr. Baum found Wolfer's complaints to be consistent with his description of the December 1979 injury. Dr. Siu also referred only to the December 1979 injury in his report.

A party may overcome the presumption of compensability either by presenting affirmative evidence that the injury is not work-connected or by eliminating all possibilities that the injury was work-connected. *Fireman's Fund American Insurance Cos. v. Gomes*, 544 P.2d 1013. Home contends that Veco was required to produce affirmative evidence to rebut the presumption of compensability and that Veco failed to produce such affirmative evidence. We disagree. There are *two* ways to overcome the presumption of compensability. One is by "negative evidence" eliminating all possibilities that an injury was work-connected. The other is by affirmative evidence. We believe that Veco's evidence is affirmative. Veco offered circumstantial evidence suggesting that Wolfer's December 1979 injury was the cause of his October 1980 disability. This evidence, if relied upon, tends to indicate that the October 1980 incident did not change the type of work Wolfer could do, or aggravate his original injury.[9]

The evidence relied upon by Veco creates a reasonable inference that prior to 1981 Wolfer believed that the October 1980 incident was merely a flare-up of his old condition. Veco's evidence is not the same as the expert opinions found sufficient to rebut the presumption in *Miller v. ITT Arctic Services*, 577 P.2d 1044 or *Delaney v. Alaska Airlines*, 693 P.2d 859 (1985). However, it does indicate that Wolfer believed that the October 26, 1980 injury was merely a flare-up of his chronic back ailment. A reasonable mind might rely on that evidence to conclude that Wolfer's employment by Veco in October 1980 did not aggravate Wolfer's injury so as to cause disability. We conclude that Veco's evidence, standing alone, was sufficient to rebut the presumption of compensability.

Since the board relied on the presumption to find Veco liable for Wolfer's disability after November 1980, and since we have found that the evidence presented was sufficient to rebut the presumption of compensability, this case must be remanded to the board. On remand the board should weigh all of the evidence presented in order to make the ultimate factual determination whether Wolfer's employment by Veco in October of 1980 was a substantial factor in causing the disability from which he now suffers. If the board finds that this proposition is more likely so than not so, then Veco is liable. If the board finds that the evidence on this point is equally balanced or that it establishes that Wolfer's employment by Veco in October 1980 more likely than not was not a substantial factor in causing his current disability, then Home must be found liable.

REVERSED and REMANDED.

---

9. In *Gomes*, we set out several examples of affirmative evidence. All of them involved an alternative explanation offered for the injury. (*See* 544 P.2d at 1016.) The employer in *Gomes* could offer no explanation for Gomes' death. Having offered no affirmative evidence, the employer was obliged to eliminate every reasonable possibility that the injury was work connected. In the instant case, however, Veco's evidence points to the December 1979 event as an alternative explanation for Wolfer's October 1980 disability. Thus it is affirmative evidence.