**BURGESS CONSTRUCTION COMPANY, and Commercial Union Assurance Companies, Petitioners and Cross-Respondents,**

v.

**William S. SMALLWOOD, Respondent and Cross-Petitioner.**

Nos. S–42, S–119.

Supreme Court of Alaska.

May 10, 1985.

Sanford M. Gibbs, Hagans, Brown & Gibbs, Anchorage, for petitioner.

Patrick T. Brown, Rice, Hoppner, Brown & Brunner, Fairbanks, for respondent.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Like a phoenix rising from the ashes, this matter is before the court for the third time. *See Commercial Union Cos. v. Smallwood (Smallwood I)*, 550 P.2d 1261 (Alaska 1976); *Burgess Construction Co. v. Smallwood (Smallwood II)*, 623 P.2d 312 (Alaska 1981). This appeal stems from the dismissal of William Smallwood's claim for worker's compensation by the Alaska Worker's Compensation Board (Board). The Board's dismissal was reversed by the superior court. We, in turn, reverse the superior court and affirm the Board's decision.

In 1970 William Smallwood (Smallwood) experienced acute renal failure, resulting in the removal of both of his kidneys and two kidney transplant operations, one of which was successful. In 1973 he filed a worker's compensation claim, alleging that his employment as a truck driver with Burgess Construction Company (Burgess) contributed to his renal failure. Smallwood's contention here, as in *Smallwood II*, is that his working conditions under Burgess exacerbated his hypertension (high blood pressure), which in turn aggravated his kidney condition and accelerated his renal failure. It is not disputed that Smallwood had a long history of kidney problems that predated his employment with Burgess. Tests taken in the early 1950's during a routine employment checkup revealed that he had chronic glomerulonephritis, a kidney condition which eventually leads to complete kidney failure. His doctors told him that he should maintain a low salt diet, but that he should not have problems arising from his condition until he was a "much older man." Smallwood concedes that he suffered from moderately severe hypertension at least from the time he began working for Burgess. However, Smallwood's actual working conditions and their effect on his developing hypertension and kidney condition are sharply disputed.

Beginning in 1968, Smallwood began to drive trucks on the haul road to the North Slope for Burgess. According to Smallwood, Burgess's truckers would drive from 4 a.m. until midnight, fuel, eat, and sleep in their trucks and be back on the road again at 4 a.m. He testified that drivers ate what food they could carry in their trucks, and that frequently the food would freeze since there were no facilities for heating it. Smallwood testified that he had carried beans, baloney and bread.

Smallwood testified that his road trips lasted from five days to two weeks.[1] When he returned home to Fairbanks between trips, he claimed that he would sleep for four or five hours and then go back to work, either in town loading for a day or two, or else directly back to the slope. Smallwood stated that he worked under these conditions during the winters of 1967–68 and 1968–69 and took one trip in the winter of 1969–70. Smallwood said that he spent two or three months of the winter of 1968–69 living in Deadhorse and ate at a messhall where the food was very good. Smallwood often drove between Fairbanks and Bettles. In the winter of 1969–70 Smallwood stayed at Burgess' pipeline construction camps in the Yukon where "nice food", "nice bunkhouses" and medivac service were available.

Smallwood testified that he was unable to seek medical assistance because he was in Fairbanks only at odd hours and for brief periods of time. However, Smallwood also said that he was able to see a

---

1. Phil Tannehill, another Burgess driver, testified that his trips took only three to four days roundtrip.

physician when he was not actually working on the slope if he had a cold or did not "feel good". He was once airlifted to Fairbanks from Burgess's camp in the Yukon when he had the flu.

Smallwood initially attributed his physical problems to the long driving hours and rough physical conditions. When he saw a doctor in the spring of 1970, three months prior to his kidney failure, he was told to stop driving, get rest and eat properly. He stopped working the haul road, started working in the Fairbanks area and shortened his hours.

Smallwood's medical expert, kidney specialist Dr. Henry Tenckhoff, first examined Smallwood shortly after his kidney failure in 1970. According to Dr. Tenckhoff, Smallwood's kidney failure was caused by malignant hypertension. Dr. Tenckhoff testified that Smallwood suffered from excessive salt intake or inadequate salt elimination, or both. In Dr. Tenckhoff's opinion, Smallwood's severe hypertension developed after Smallwood began to drive the haul road to the North Slope for Burgess, and that "working conditions played a significant role in Mr. Smallwood's hypertension and therefore his renal disease," since he could neither maintain a proper diet while on the road nor see a physician. He also concluded that Smallwood did not understand the severity of his disease and "the true implications of his dietary regimen." Dr. Tenckhoff's opinions were based solely on his study of Smallwood's medical record and Smallwood's testimony before the Board.

Burgess's medical expert, Dr. William M. Bennett, also a kidney specialist, contended that Smallwood's renal failure was the natural result of a progressive disease, and did not believe that there was a "reasonable probability" that there was any correlation between Smallwood's employment and his kidney condition. He thought that the course of Smallwood's illness was indistinguishable from that of "someone who stayed home and had the same disease and the same degree of blood pressure control." Dr. Bennett acknowledged that there was a "chance" or "possibility" that Smallwood's hypertension and kidney condition could have been aggravated by his diet and working environment, although he did not think they were probable causative factors. Like Dr. Tenckhoff, Dr. Bennett thought that Smallwood's "awareness of the condition was not appropriate to the condition."

The Board noted that in *Smallwood II,* we held that Smallwood had established a preliminary link between his employment and his kidney failure, thus raising the statutory presumption of compensability under AS 23.30.120.[2] The Board went on to hold that Burgess had overcome the presumption by presenting substantial evidence eliminating all reasonable possibilities that the acceleration of Smallwood's condition was work related.

The Board found that Dr. Bennett and Dr. Tenckhoff essentially agreed on the causes of Smallwood's accelerated hypertension and that Dr. Tenckhoff had simply gone one step further by stating that Smallwood's ability to control his blood pressure was limited by his working conditions. The Board then examined Smallwood's testimony and found it to be "exaggerated," sometimes "to the point of incredibility." The Board believed Smallwood had exaggerated the amount of time he spent working on the haul road, noting that his testimony conflicted with Phil Tannehill's. It found that Smallwood could see a doctor "with reasonable frequency," noting that he had been airlifted to a doctor once, and had been seen by doctors when

**2.** AS 23.30.120 states:
(a) In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that
(1) the claim comes within the provisions of this chapter; ...

In *Delaney v. Alaska Airlines,* 693 P.2d 859, 862 (Alaska 1985) we said in part:
We have held that a disability is presumed to be compensable when a claimant has established a "preliminary link" between his disability and his employment.

he did not feel well. The Board believed that Smallwood could have taken lower salt content food with him when he travelled. It found that he was not forced to eat high salt content foods at the pipeline camps, noting that he had not presented testimony regarding the food prepared at the camps, and had not informed his employer of his needs. Neither did the Board believe that Smallwood thought he would lose his job if he informed his employer of his dietary needs.

The Board concluded that Burgess had overcome the presumption of compensability:

> We find the employee's working conditions did not prevent him from keeping to a low-salt diet, taking anti-hypertensive and diuretic drugs regularly, or seeking medical assistance. We base this finding on a close, careful assessment of the employee's testimony. The only medical evidence establishing a relationship between the employee's kidney disease and his working conditions [was] based on the assumption that the employee's work limited his ability to stay on a low-salt diet and seek medical care. However, the employee's testimony shows he had this ability. He could see doctors; he bought his own food for the truck; he never told anyone he needed low-salt food. We conclude all, indeed the only, reasonable possibilities that the kidney failure due to accelerated hypertension was work related have been eliminated. We conclude the presumption was overcome. [footnote omitted]

The superior court reversed the Board's decision as clearly erroneous, holding that its decision was not supported by substantial evidence and remanded the case for a determination of the compensation to be awarded. We granted Burgess's petition for review.

■ Where, as here, the superior court is acting as an intermediate court of appeal, we independently review the Board's findings of fact, rather than those of the superior court. In *Veco, Inc. v. Wolfer,* 693 P.2d 865, 869 (Alaska 1985) we said the following concerning the applicable standard of review in worker's compensation cases:

> [T]he court must independently examine the sufficiency of the employer's evidence when reviewing a Workers' Compensation Board determination that an employer has or has not rebutted the presumption of compensability. [Footnote omitted.]

■ In *Veco,* we further stated that when reviewing a Worker's Compensation Board determination that an employer either has or has not successfully rebutted the presumption of compensability, the reviewing court should examine the evidence tending to rebut the presumption "by itself" and should "not weigh the evidence tending to establish causation against the rebuttal evidence in deciding whether the employer has produced substantial evidence to rebut the presumption of compensability." 693 P.2d at 869–70 (footnote omitted).[3]

■ In the circumstance where the presumption of compensability has been successfully rebutted, the presumption is eliminated and the employee must prove all the elements of his case by a preponderance of the evidence. In reviewing the Board's decision that an employee has or has not met that burden, we apply the substantial evidence test. *Miller v. ITT Arctic Services,* 577 P.2d 1044 (Alaska 1978). Substantial evidence is evidence that, in light of the whole record, a reasonable mind would accept as adequate to support the conclusion at issue. *Delaney v.*

---

**3.** This does not mean that we determine the substantiality of a Board decision "merely on the basis of evidence which in and of itself justified it, without taking into account contra- dictory evidence or evidence from which conflicting inferences could be drawn." *Delaney v. Alaska Airlines,* 693 P.2d 859, 863 n. 2 (Alaska

*Alaska Airlines,* 693 P.2d 859, 863 (Alaska 1985); *Smallwood II,* 623 P.2d at 315.[4]

 Once the presumption of compensability has been raised, it is the employer's burden to overcome the presumption by coming forward with substantial evidence that the injury was not work related. *Smallwood II,* 623 P.2d 312 (Alaska 1981); *Beauchamp v. Employer's Liability Assurance Corp.,* 477 P.2d 993 (Alaska 1970). There are two methods by which the presumption can be overcome: 1) affirmative evidence that the injury was not work-related, or 2) elimination of all reasonable possibilities that the injury was work connected. *Fireman's Fund American Insurance Cos. v. Gomes,* 544 P.2d 1013, 1016 (Alaska 1976). The Board proceeded under the second method, concluding that Smallwood's testimony "eliminates all reasonable possibility that his hypertension was work related, because his testimony is not credible and does not support the assumptions underlying Dr. Tenckhoff's opinion."

The Board did not believe Smallwood's claims that his working conditions prevented him from maintaining a low-salt diet or seeking medical aid. Since Dr. Tenckhoff's opinions regarding the effect of Smallwood's employment on his kidney condition were based on his understanding that Smallwood's working conditions prevented him from seeing doctors and staying on a low salt regime, the Board regarded Dr. Tenckhoff's opinion as based on false information and therefore as unsupportive of Smallwood's claim.

Burgess points to the following as substantial evidence in support of the Board's findings:

(1) Smallwood testified that he was able to see a physician when he needed one while working outside of Fairbanks.

(2) While Smallwood was away from Fairbanks he could eat "awfully good" food at mess facilities.

(3) Smallwood chose the food he brought with him on his trips on the haul road.

(4) Dr. Bennett testified that Smallwood's employment was not a major factor in causing his kidney failure.

 Smallwood's testimony that he was able to see physicians when necessary, that he ate at very good mess halls and that he brought his own food with him, furnishes a strong inference that he was not prevented from lowering his salt ingestion or from seeking medical care while working on the haul road. Thus, we conclude that there was substantial evidence to support the Board's decision under the "eliminating all possibilities that the injury was work-connected" prong of *Gomes.*[5] Additionally, we are of the view, and so hold, that Dr. Bennett's testimony, in and of itself, constitutes substantial evidence supporting the Board's decision under the affirmative evidence prong of *Gomes.*

 Once it has been determined that the presumption has been successfully rebutted, the next step in the analysis is to determine whether the employee has proved all elements of his claim by a preponderance of the evidence. *Veco v. Wolfer,* 698 P.2d 865, 872 (Alaska 1985). Here again our review of the record persuades us that all elements of Smallwood's claim were not proven by a preponderance of the evidence. We therefore conclude that the Board's decision is supported by substantial evidence and that Smallwood's claim is not compensable.

The judgment of the superior court is REVERSED and the decision of the Board is AFFIRMED.

1985) (*quoting Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950)).

**4.** In *Beauchamp v. Employers Liability Assurance Corp.,* 477 P.2d 993, 997 (Alaska 1970) we said:

On review, the court may not weigh the evidence or choose between competing inferences reasonably possible from the evidence. We are limited to a determination of whether the Board's findings were supported by substantial evidence in light of the whole record. [footnotes omitted]

**5.** *Fireman's Fund American Insurance Cos. v. Gomes,* 544 P.2d 1013 (Alaska 1976).