STATE of Alaska, DEPARTMENT OF
REVENUE, PERMANENT FUND
DIVIDEND DIVISION, Appellant,

v.

Harlan G. WILDER, Carolyn E. Wilder,
Allison C. Wilder, and Stephanie C.
Wilder, Appellees.

No. S–7187.

Supreme Court of Alaska.

Jan. 10, 1997.

Marilyn May, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

R.R. De Young, Wade & De Young, Anchorage, for Appellees.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

The Department of Revenue (Department) appeals the superior court's reversal of a

Department decision denying a number of permanent fund dividend (PFD) applications filed by members of the Wilder family. We reverse.

## II. FACTS AND PROCEEDINGS

Harlan Wilder has been an officer in the Judge Advocate General Department of the United States Air Force since 1972. In 1975 he requested and was granted a transfer from Washington State to Alaska. Wilder arrived in Anchorage in October 1975. He was joined shortly thereafter by his wife Carolyn and their two children, Allison and Stephanie. While in Alaska Wilder became a member of the Alaska Bar Association, obtained an Alaska driver's license, opened Alaska bank accounts, registered to vote as an Alaskan, and obtained Alaska motor vehicle registrations. The Wilders also bought a house and an interest in a lot in Anchorage.

In 1980 Wilder was transferred to Alabama, and his family relocated with him. Between 1980 and 1991 the Wilder family relocated four times, as Wilder rose through the ranks to the grade of colonel. During that time Wilder maintained his motor vehicle registrations in Alaska, renewed his Alaska driver's license, and maintained his membership in the Alaska Bar Association. The Wilders sold their Anchorage house in 1980 but retained their interest in the Anchorage lot. Wilder's Alaska voter's registration lapsed in the mid–1980s, but he renewed it in 1989. The Wilders returned to Alaska only in June 1989. Their visit lasted less than one week.[1]

Wilder, his wife, and their two children received PFDs from 1980 through 1991. In 1982 the Wilders had a third child, Andrew. The Wilders applied for PFDs on his behalf. Andrew received such benefits until 1989.[2]

In 1992 the Department issued notices of denial for the Wilders' 1989, 1990, and 1991 PFD applications.[3] After a formal hearing, a Department hearing officer affirmed the denials, concluding that the Wilders had not carried the burden of demonstrating that when they filed their 1989, 1990 and 1991 PFD applications, they were Alaska residents with the intent to return to and remain in Alaska permanently. The hearing officer found that the Wilders had only demonstrated an intent to "remain eligible for PFDs."

The superior court reversed the Department's decision, commenting:

> The great weight of evidence confirms Colonel Wilder's intent to return to Alaska permanently. It is difficult to see what more he could have done to demonstrate his intent. His maintenance of active bar membership and personal contacts in Alaska is highly probative. The final decision [of the Department] is not supported by substantial evidence in the record as a whole.

The Department appeals.

## III. DISCUSSION

### A. Standard of Review

■ This court gives no weight to the superior court's decision when the superior court acts as an intermediate appellate court. State, Dep't of Revenue v. Bradley, 896 P.2d 237, 238 n. 2 (Alaska 1995). We review the Department's finding that the Wilders did not have the necessary intent to return and to remain permanently in Alaska under the substantial evidence standard. See, e.g., Tinker v. Veco, Inc., 913 P.2d 488, 492 (Alaska 1996) (agency findings reviewed under substantial evidence standard). Substantial evidence is "such relevant evidence as a rea-

1. Alaska Statute 43.23.005(a) was amended in 1989 to require that an individual be present in the state at some time during the two year period prior to any dividend year. AS 43.23.005(a)(3) (renumbered AS 43.23.005(a)(4) in 1992). Wilder admits that he came to Alaska in 1989 in part to comply with this requirement.

2. The Wilders have not appealed the superior court's affirmance of the Department's decision denying Andrew's 1989–91 applications.

3. While most of those dividends had already been paid, the Department was empowered to recover improperly paid dividends under AS 43.23.035(b).

sonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Fireman's Fund American Ins. Cos. v. Gomes,* 544 P.2d 1013, 1015 (1976)). However, "the ultimate question of whether the quantum of evidence is itself substantial is a legal question, for which the court will independently review the evidence." *Id.*

B. *Wilder Failed to Prove His Intent to Return and to Remain Permanently in Alaska.*

 To be eligible for a PFD, an individual must be a state resident on the date of application. AS 43.23.005(a)(2). During the relevant period, "state resident" was defined as "an individual who is physically present in the state with the intent to remain permanently or, if not physically present, intends to return to the state and is absent only for [certain enumerated] reasons." AS 43.23.095(8)(amended 1992).[4] Military service is one of the enumerated reasons. AS 43.23.095(8)(C). Individuals absent from the state for allowable reasons must demonstrate at all times during their absence an intent to return to and to remain in Alaska permanently. 15 AAC 23.163(f).[5] Absences exceeding five years result in presumptive ineligibility. *Id.* Thus, when Wilder applied for PFDs in 1989–91, presumptively he was no longer a state resident as he had been absent for more than five years. *Id.* There is substantial evidence in the record to support the Department's conclusion that Wilder failed to rebut this presumption.

The Department discounted what it called Wilder's "paper ties" to Alaska. These ties, including Alaska motor vehicle registration, Alaska voter registration, Alaska driver's license, and membership in the Alaska Bar Association, are entitled to some weight. However, they are not conclusive evidence on the issue of intent to return to Alaska. Sound policy requires more than such "paper ties" to establish eligibility for PFDs. *See State, Dep't of Revenue v. Cosio,* 858 P.2d 621, 625 (Alaska 1993) ("The objective of AS 43.23.095(8) [defining state resident] is to limit payment of dividends to permanent residents."); *see also Brodigan v. State, Dep't of Revenue,* 900 P.2d 728, 733 n. 12 (Alaska 1995) ("[T]he residency requirement[s] for PFD eligibility may differ from other residency requirements.").

The Department correctly placed significance on the fact that Wilder returned to Alaska only once between 1980 and 1992. Wilder testified that "it isn't worth it to come back for no apparent reason than to just touch base with the State of Alaska." Bringing a family of five to Alaska involves significant expense. Nevertheless, as the Department noted, "individuals who profess residency in a state can be expected to return to that state from time to time." Wilder asserts that he cannot afford to "throw away 4, 5, $6,000 every couple of months to come back to Alaska." Wilder need not come back "every couple of months" to prove an intent to return. At the same time, one short visit in a twelve-year period strongly militates against his residency claim.

---

4. Section .095(8) now reads:

(8) "state resident" means an individual who is physically present in the state with the intent to remain permanently in the state *under the requirements of AS 01.10.055* or, if the individual is not physically present in the state, intends to return to the state and remain permanently in the state *under the requirements of AS 01.10.055,* and is absent only for [certain enumerated] reasons.

AS 43.23.095(8) (emphasis added). In amending section .095(8), the legislature declared that "[t]he change to the definition of residency in [AS 43.23.095(8)] only clarifies what the legislature intended the definition to be." § 16, ch. 4, SLA 1992. *See Matanuska–Susitna Borough v. Hammond,* 726 P.2d 166, 176 n. 21 (Alaska 1986) ("Subsequent legislation declaring the in-

tent of a previous enactment is entitled to great weight."). Under AS 01.10.055, a person establishes residency "by being physically present in the state with the intent to remain in the state indefinitely and to make a home in the state." AS 01.10.055(a). One who has established residency "remains a resident during an absence from the state unless during the absence the person establishes or claims residency in another state, territory or country, or performs other acts or is absent under circumstances that are inconsistent with the intent required under (a) of this section to remain a resident of this state." AS 01.10.055(c).

5. This provision was numbered 15 AAC 23.150(e) in 1989, and 15 AAC 23.175(f) in 1990.

The Department also based its decision on Wilder's failure to request reassignment to Alaska. Wilder makes no secret of the fact he did not request reassignment to Alaska after 1986 because to do so would have been "career damaging." Wilder admits there is a JAG position in Alaska but asserts that he did not apply for it because it would have been "a giant step backward in my career for me to request this assignment." He argues "there is absolutely nothing inconsistent with my pursuit of a full career in the Air Force and my intent to return to Alaska and remain there permanently at the end of my career."

Without minimizing the unique nature and special demands of a career in the military, we conclude that Wilder has made a choice, and that choice is inconsistent with an intent "at all times" to return to Alaska. 15 AAC 23.163(f). In determining an individual's intent to return to Alaska, the Department is specifically authorized to consider both "the priority the individual gave Alaska on an employment assignment preference list, such as those used by military personnel" and "whether the individual made a career choice or chose a career path that does not allow the individual to reside in Alaska or return to Alaska." 15 AAC 23.163(g). Though Wilder may express a wish to return to Alaska, any present desire to do so appears to have been outweighed by a career choice which does not allow for such a return until after retirement. Under these circumstances, the Department could reasonably conclude that Wilder has not evidenced an intent to return to Alaska sufficient to maintain eligibility for PFDs.

### C. Carolyn, Allison, and Stephanie Wilder Are Ineligible for PFDs.

Carolyn, Allison, and Stephanie Wilder were not absent from the state for an allowable reason, since they left the state only to accompany Harlan Wilder. See AS 43.23.095(8). Thus, under regulations in force at the time of the applications at issue, their eligibility for PFDs turns on Harlan Wilder's eligibility. See 15 AAC 23.150(f) (1989) (repealed 1/1/93) and 15 AAC 23.175(c)(13) (1990) (repealed 1/1/93) (providing that a spouse or child accompanying an individual absent from the state for an allowable reason is eligible for a PFD if he or she was a resident of Alaska for six months before departure and has not established residency elsewhere). Since Wilder is ineligible for PFDs, it follows that his wife and children are also ineligible.

### IV. CONCLUSION

The Department concluded: "It is clear that while the Wilders lived in the state, they considered themselves Alaskan residents. After they left the state, it is equally clear ... they did not maintain their intent to return to the state to remain permanently." Although there are competing inferences to be drawn from the testimony, the Department's conclusion is one which a reasonable mind could reach, based on the evidence in the record.

The judgment of the superior court is REVERSED and the case REMANDED with instructions to enter judgment in favor of the State, Department of Revenue.