**EMPLOYERS COMMERCIAL UNION COMPANY, a Foreign Corporation and Aspeotis Construction Company, Appellants,**

v.

**Peter LIBOR and Alaska Workmen's Compensation Board, Appellees.**

**No. 2119.**

Supreme Court of Alaska.

June 6, 1975.

Sanford M. Gibbs, of Hagans, Smith & Brown, Anchorage, for appellants.

Suzanne C. Pestinger and William K. Jermain of Birch, Jermain, Horton & Bittner, Anchorage, for appellee Libor.

OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

CONNOR, Justice.

This is an appeal from the judgment of the superior court reviewing a decision of the Alaska Workmen's Compensation Board.

About May 24, 1969, Peter Libor, while employed by the Aspeotis Construction Company, was struck in the small of his back by a rock which had been accidentally dislodged. At the time, appellee was in a bent over position standing in a ditch. The rock, which fell from above, was approximately eight inches across and weighed between four and five pounds. The injury was diagnosed as a fracture of the transverse process of the right side of vertebrae L2 and L3. Libor was absent from work for about two weeks. He then returned to work until February 25, 1971, at which time, because of increased pain in his low back, he went to see Dr. Tryon Wieland in Anchorage.

Dr. Wieland prescribed exercise and physical therapy. When that procedure afforded little relief, Libor consulted Dr. George A. Lyon, who diagnosed Libor's

condition as an intravertebral disc extrusion at L5–S1 interspace. On April 1, 1971, Libor underwent a right L5–S1 hemilaminectomy.

After the operation, Libor filed a claim with the Alaska Workmen's Compensation Board, contending that his herniated disc' was a result of his May 24, 1969 accident. Libor's claim was controverted by the appellant.

A hearing was held before the board on July 20, 1971. At the hearing Mr. Libor testified that he suffered pain in his lower back from May 24, 1969, and that this pain had increased substantially by February, 1971. He testified that between May 24, 1969, and February 25, 1971, he suffered no intervening injuries.

It was, however, "apparent to counsel and to the board that there was insufficient medical evidence available to determine the issues." It was agreed to hold the record open for submission of medical reports, particularly an orthopedic examination performed by Dr. Thomas F. Kiester on September 22, 1971.

The clinical notes of Dr. Wieland and Dr. Lyon were placed in the record, as well as a letter dated September 28, 1971, from Dr. Wieland to Libor's attorney. In that letter he states as follows:

"I wish I had the ultimate wisdom to reconcile the controversy as to whether the original injury in 1969 was a start of what proved to be an L–5 S–1 disc in 1971.

. . . . . . .

I cannot make a definite statement between the connection of the two injuries. It would seem to me that this would be best elucidated by testimony of the patient as to how much back pain he had during the interim period. It is my recollection that he did complain of pain in his back off and on and certainly the original injury could have contributed to his ultimate herniated disc at the L5–S1 level.

. . . . . .

. . . I have not seen Mr. Libor since the 4th of June, 1971 and have no knowledge of his status. It would be my impression that he should make complete recovery following surgery and there will be no ultimate permanent disability with this injury. Again I wish I could reconcile this matter for you. I see no reason why there could not be a relationship between the two injuries but it would be almost impossible for me to make the causal connection."

A "Physician's Report of Injury", signed by Dr. Kiester and dated September 27, 1971, was also put in the record. In response to the question, "Is accident above referred to the only cause of patient's condition?", Dr. Kiester had answered, "Yes."

However, on February 7, the board received an affidavit from Dr. Kiester, dated January 20, which stated, in part:

"I answered affirmatively the question posed in paragraph (13) of the physician's report of injury since this was the claim made by Mr. Libor and I do not consider that it is my duty, as a physician, to determine whether or not an accident described by a patient is work-connected if the patient contends that it is;

. . . In my opinion, the accident, which Mr. Libor described to me which I have assumed occurred in May of 1969, cannot, with a reasonable degree of medical certainty, be said to be either the cause of or to have precipitated a herniated disc for which Mr. Libor was subsequently treated through a partial hemi laminectomy L5–S1."

The board's decision was issued on February 15, 1972. A supplementary decision was issued April 28, 1972.

In finding for the claimant in its initial decision, the board relied not only upon a factual finding that Libor's problems were work-related, but also upon its reading of Beauchamp v. Employers Liability Assurance Corp., 477 P.2d 993 (Alaska 1970), and Thornton v. Alaska Workmen's

Compensation Board, 411 P.2d 209 (Alaska 1966), for the proposition that,

". . . in the absence of substantial evidence to the contrary, the Workmen's Compensation Act creates a presumption that a claim for compensation comes within the provisions of the statute and if there is any doubt as to the substance of medical testimony, it must be resolved in favor of the claimant;"

In the supplementary decision the board said:

". . . [W]e are inclined to accept the doctor's explanation of the seeming conflict between his September 27, 1971 report and his January 20, 1972 affidavit but this case was not decided solely on the medical opinion of one doctor. Reference to our decision of February 15, 1972 will disclose that it contains the opinions of other doctors. Further than this the Board cited the *Beauchamp* and the *Thornton* cases as at least a partial basis for its decision."

Appellant first sought review of this award in the superior court. There it asserted that there was no substantial evidence to support the board's finding that Libor's herniated disc was caused by his injury of May 24, 1969. Libor, of course, argued to the contrary. Appellant argued, additionally, that the board erroneously applied the statutory presumption of compensability, contained in AS 23.30.120(1) [1], that there was substantial evidence contrary to the presumption, and that the benefit of the presumption was not available to the claimant.

The superior court held that any reliance on the statutory presumption was harmless error because, even if the presumption was not available, there was, nevertheless, substantial evidence to support the award. It therefore affirmed the board's decision.

Essentially the same arguments are presented by the parties in this appeal.

■ It is true that in Anchorage Roofing Co., Inc., v. Gonzales, 507 P.2d 501, 504 (Alaska 1973), we alluded to the rule that once the employer has come forward with competent evidence overcoming the effect of the statutory presumption, the presumption drops out, and it is incumbent upon the claimant to produce substantial evidence which demonstrates that his claim is compensable. Appellant's argument assumes, however, that there was not substantial evidence, apart from the presumption, to support the award. We will, therefore, turn first to the question of whether the award can be sustained without reference to any presumption.

In Beauchamp v. Employers Liability Assurance Corp., 477 P.2d 993, 996–97 (Alaska 1970), we held that uncontradicted lay testimony, coupled with inconclusive medical testimony, can be enough to support a finding by the board that a physical condition is causally connected to an accidental injury sustained in the course of the employment. This holding is based in part on the rationale expounded by Professor Larson in his well-known treatise:

"To appraise the true degree of indispensability which should be accorded medical testimony, it is first necessary to dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis. Thus, in many instances it may be impossible to form a judgment on the relation of the employment to the injury, or relation of the injury to the disability, without analyzing in medical terms what the injury or disease is. But this is not invariably so."

. . . . . .

". . . [T]wo underlying reasons may be discerned: The first is that lay

---

1. AS 23.30.120(1).
  "In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that

(1) the claim comes within the provisions of this chapter;"

testimony, including that of claimant himself, is of probative value in establishing such simple matters as the existence and location of pain, [and] the sequence of events leading to the compensable condition . . . [T]he second is that industrial commissions generally become expert in analyzing certain uncomplicated kinds of medical facts, particularly those bearing on industrial causation, disability, malingering and the like." 3 Larson, Workmen's Compensation Law § 79.51, at 180–81, § 79.53, at 196 (1973). (Citations omitted)

These principles are dispositive of the case at bar. Libor testified that he experienced periodic pain from May of 1969 until February of 1971. Dr. Wieland's statements reveal that he was unable to say with reasonable certainty that the herniated disc condition was work-related, but he did state that the question could best be resolved by the testimony of the patient as to how much back pain was experienced in the interim period, and that the original injury could have contributed to the ultimate herniated disc condition. Dr. Kiester's affidavit stated that the 1969 injury could not, with a reasonable degree of medical certainty, be said to be the cause of the herniated disc condition. It is noteworthy that Dr. Kiester did not positively exclude a causal connection; he was merely unable to establish it.

Given this state of the record, the board could properly rely upon the combination of the claimant's lay testimony and the inconclusive medical testimony of Dr. Wieland. The two together constituted substantial evidence on the element of work connection.

The board could additionally rely upon the statutory presumption contained in AS 23.30.120(1), that the claim was within the act, as the presumption was not overcome by substantial evidence to the contrary.

Affirmed.