**Paul GRAINGER, Appellant,**

v.

**ALASKA WORKERS' COMPENSATION BOARD, City of Ketchikan, and Industrial Insurance Company, Appellees.**

No. S–3466.

Supreme Court of Alaska.

Feb. 22, 1991.

Dennis L. McCarthy, Law Offices of Clifford H. Smith, Ketchikan, for appellant.

Patrick E. Murphy, Batchelor, Murphy & Brinkman, Juneau, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This is an appeal from a judgment in the superior court affirming a decision by the Alaska Workers' Compensation Board. The Board denied Paul Grainger disability benefits for a heart condition he developed while working for the City of Ketchikan as a powerhouse operator. We

are reviewing the case for the second time. *See Grainger v. Ketchikan,* 751 P.2d 1355 (Alaska 1988) (*Grainger I*). Like the superior court, our task is to determine whether the decision of the Workers' Compensation Board is contrary to law or unsupported by substantial evidence. *Wilson v. Erickson,* 477 P.2d 998, 999 (Alaska 1970); *Beauchamp v. Employers Liab. Assurance Corp.,* 477 P.2d 993, 994, 997 & n. 14 (Alaska 1970).

The Board found that Grainger had submitted sufficient evidence to establish a preliminary link between his employment and his heart condition. Therefore, the Board applied the statutory presumption of compensability to his claim. AS 23.30.-120(a); *see Burgess Constr. Co. v. Smallwood,* 623 P.2d 312, 316 (Alaska 1981). The Board then found that Ketchikan overcame this presumption with substantial evidence that the heart condition was not work related. The Board concluded that the presumption no longer applied and required Grainger to prove all elements of his claim by a preponderance of the evidence. *See Veco, Inc. v. Wolfer,* 693 P.2d 865, 870 (Alaska 1985). The Board ruled that Grainger failed to prove that his heart condition was causally related to his employment and denied his claim. Grainger appealed the Board's ruling to the superior court, arguing that the Board erred in finding that Ketchikan rebutted the presumption of compensability. The superior court affirmed the Board, and this appeal followed.

 We hold that Ketchikan failed to rebut the presumption of compensability as a matter of law. Once the presumption arises, an employer can overcome it by presenting substantial evidence[1] that either (1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial cause of the disability; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability. *Fireman's Fund,* 544 P.2d at 1016; *see also Wolfer,* 693 P.2d at 872 n. 9 (alternative explanation for the cause of a disease or injury must provide a reasonable basis on which to conclude that the disability was not work related).

The issue here is whether Ketchikan has presented substantial evidence that either provides an alternative explanation for the cause of Grainger's heart condition or eliminates any reasonable possibility that work related stress was a substantial factor in aggravating or accelerating the disease.[2] *See Thornton,* 411 P.2d at 210.

In answering this question, it must be remembered that no single factor can be isolated as the "cause" of Grainger's disease, arteriosclerosis. Both of the physicians who testified agreed that several risk factors often operate together to precipitate or accelerate the development of the disease. Thus, it is not a sufficient "alternative explanation" for Ketchikan merely to point to Grainger's obesity and lack of exercise as precipitating factors in the development of his disease. While these factors were likely to have contributed to the onset of Grainger's condition, there is no evidence that they were the *exclusive* causes or that work related stress was not *another* causal factor.[3]

1. We have defined substantial evidence as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Fireman's Fund Am. Ins. Cos. v. Gomes,* 544 P.2d 1013, 1015 (Alaska 1976) (quoting *Thornton v. Alaska Workmen's Comp. Bd.,* 411 P.2d 209, 210 (Alaska 1966)). Whether the employer has presented substantial evidence is a question of law, and we may independently review the evidence to determine whether it was substantial. *Id.*

2. We examine Ketchikan's evidence standing alone without weighing it against the evidence Grainger presented to establish a causal connection between stress and his heart condition.

*Wolfer,* 693 P.2d at 869 ("Since the presumption [of compensability] shifts only the burden of production and not the burden of persuasion, the evidence tending to rebut the presumption should be examined by itself.").

3. Indeed, one physician testified that all three factors were likely "components" in the development of Mr. Grainger's heart disease. There is no requirement in our law that work related factors be the *unique* or *primary* cause of a compensable disability. In *Thornton,* 411 P.2d at 211, we held that work related factors need only be a "precipitating factor" in causing a heart attack. *See also Wilson,* 477 P.2d at 1000 (a disability is compensable if employment ag-

In *Grainger I*, we remanded with instructions that the Board consider the facts of this case in light of our decisions in *Wade v. Anchorage School Dist.*, 741 P.2d 634 (Alaska 1987), and *Fox v. Alascom, Inc.*, 718 P.2d 977 (Alaska 1986). *Grainger I*, 751 P.2d at 1355. In those cases, we explicitly rejected the "unusual stress in the profession" test, or any other objective threshold requirement for stress and mental injury claims. *Wade*, 741 P.2d at 637–38. We determined that a mental injury claim "should be analyzed the same way as any other claim for workers' compensation benefits." *Fox*, 718 P.2d at 984. We reasoned in *Fox* that the employer "take[s] the employee 'as he finds him.'" *Id.* at 982. In *Wade*, we added that "egg-shell" claimants should not be precluded "from recovery ... solely because they succumb to stressful job conditions to which others in the profession do not succumb." *Wade*, 741 P.2d at 639. The same reasoning applies when work related stress is alleged as a factor in the development of heart disease.

In finding that the City of Ketchikan successfully rebutted the presumption of compensability, the Board relied on the testimony of Grainger's co-workers. The Board found that the co-workers' testimony "effectively rebutted" Grainger's testimony regarding the sources of his stress at work. The Board has the "sole power to determine the credibility of witnesses." AS 23.30.122. However, even granting that the co-workers' accounts of employee interaction and job stress are more reliable than Grainger's own account, the record does not support the Board's conclusion

that their testimony rebutted Grainger's testimony. Nor does the record substantiate the claim that Grainger experienced no work related stress.[4]

Not one witness testified that Grainger did not suffer stress because of his work. When cross-examined by Grainger's attorney, the co-workers and supervisors stated that they did not know whether he experienced work related stress and acknowledged that his work could have been stressful to him. At best, this testimony supports the conclusion that Grainger was subjected to no greater stress than an average powerhouse operator in the normal course of his duties. Given our decisions in *Fox* and *Wade*, it would make little sense to conclude that Ketchikan can successfully rebut the presumption of compensability merely on a showing that Grainger experienced no more stressful work conditions than an average employee in his profession.

The Board also relied on the testimony of Grainger's treating physicians, Dr. Salness and Dr. Stewart. The Board's reliance on Dr. Stewart's medical testimony was surprising as well as misguided.[5] As we pointed out in *Grainger I*:

> Dr. Stewart did not testify that job related stress was or was not a "substantial factor" in bringing about the final result. Dr. Stewart's testimony was that there was insufficient evidence or documentation in his records regarding environmental or physical or emotional stress [to conclude that work related stress played

gravated, accelerated, or combined with pre-existing disease to contribute to a heart attack).

4. On the contrary, the testimony of Grainger's supervisors and his fellow powerhouse operators establishes at a minimum that: (1) Grainger had "personality conflicts" with his supervisor; (2) his chest pains began at work after he had worked several overtime shifts; (3) he received numerous calls at his station from customers angry over power outages; (4) as the operator at the Ketchikan powerhouse, Grainger was "in charge of the whole [electrical power] system"; (5) major power outages are stressful for the powerhouse operator; and (6) the operator's performance during these outages was sub-

ject to close inspection and was often criticized by superiors.

All of these features of Grainger's job could be considered stress producing. This testimony cannot be reasonably relied on to conclude, as the Board apparently concluded, that Grainger experienced no work related stress.

5. We should point out that we did not dispute Dr. Stewart's credibility or the weight to be accorded his testimony in *Grainger I*. Rather we suggested that his testimony failed to provide substantial evidence to support the Board's conclusion that work related stress was not a factor in the development of Grainger's disease. *Grainger I*, 751 P.2d at 1355 n. 1.

a "unique or primary" role in the development of Mr. Grainger's disease].

*Grainger I,* 751 P.2d at 1355 n. 1. Likewise Dr. Salness's testimony offers no support for the conclusion that work related stress played little or no role in the development of Mr. Grainger's disease. At best the medical testimony is inconclusive. *See Rogers Elec. Co. v. Kouba,* 603 P.2d 909, 912 (Alaska 1979). The burden of production was on the City of Ketchikan. When the evidence offered to rebut the claim is uncertain, the presumption operates to uphold the compensability of the claim. *See Fireman's Fund,* 544 P.2d at 1017 (presumption operates to maintain compensability of the claim where the evidence could not establish that the injury was or was not work related).

■ We hold that the Board erred in concluding that Ketchikan presented substantial evidence rebutting the presumption of compensability. We will reverse a Board decision when we "'cannot conscientiously find that the evidence supporting that decision is substantial.'" *Delaney v. Alaska Airlines,* 693 P.2d 859, 864 n. 2 (Alaska 1985) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1950)). After reviewing the record, we conclude that Ketchikan failed to produce substantial "affirmative evidence" that Grainger's heart condition was caused by factors other than work related stress. *See Wolfer,* 693 P.2d at 872 n. 9. Neither did the city sufficiently eliminate all reasonable possibility that work related stress was a substantial factor in the development of Grainger's heart condition. Since Ketchikan failed to rebut the presumption of compensability, Grainger's claim is compensable under AS 23.30.120(a). Having decided this point in Grainger's favor, we do not need to address his second argument that he proved his claim by a preponderance of the evidence.

REVERSED and REMANDED.

MATTHEWS and MOORE, JJ., dissent, for the reasons expressed in Justice Matthews' dissent in *Grainger v. Alaska Workers' Compensation Bd,* 751 P.2d 1355, 1356 (Alaska 1988) (Matthews, J., dissenting).