**W.R. GRASLE COMPANY & Argonaut Insurance Company, Appellants,**

v.

**Robert MUMBY, Appellee.**

No. S-4186.

Supreme Court of Alaska.

June 26, 1992.

Allan J. Olson and John T. Robertson, Staley, DeLisio, Cook & Sherry, Anchorage, for appellants.

Chancy Croft, Chancy Croft Law Office, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

BURKE, Justice.

This workers' compensation appeal presents the question whether W.R. Grasle Co. (Grasle) should continue to pay Robert Mumby's medical expenses for treatment of his chronic hypertension. The Alaska Workers' Compensation Board (Board) determined that Grasle rebutted the presumption that Mumby's hypertension was job related and denied Mumby's claim for compensation. The superior court reversed, holding that the Board's decision was not supported by substantial evidence. Grasle now appeals claiming that the superior court erred in reversing on this point. Two subsidiary issues are whether laches bars Grasle's controversion of liability and whether the superior court improperly awarded attorney's fees.

The record supports the Board's determination that Grasle overcame the presumption of compensability. Specifically, the Board reasonably relied on Dr. Kloster's testimony to conclude that Mumby's hypertension was neither caused nor worsened by his work related back injury or the pain associated with it. In *Grainger v. Alaska Workers' Comp. Bd.*, 805 P.2d 976 (Alaska

1991), we held that an employer can overcome the presumption of compensability:

> by presenting substantial evidence that either (1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial cause of the disability; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability.

*Id.* at 977 (footnote omitted).

In this case Dr. Kloster testified that shortly after his accident, Mumby exhibited a symptom of chronic hypertension (i.e. a thickening of the heart muscle) which normally takes years to develop. The doctor further testified that Mumby's blood pressure readings in the 60's and early 70's indicated that he was on the way to developing chronic hypertension well before he slipped and injured his back at work. Based on his experience treating patients with chronic hypertension, his examination of Mumby, and Mumby's medical records, Dr. Kloster concluded that neither Mumby's injury nor the pain associated with the injury was a substantial or contributing factor to the development of Mumby's hypertension. Dr. Kloster testified that Mumby's high blood pressure following the injury was simply part of a natural progression of his condition. In other words, Mumby would have developed chronic hypertension whether or not he had been injured. This testimony is a sufficient "alternative explanation" which the Board reasonably accepted to support its conclusion that Grasle had rebutted the presumption of work relatedness.

Given our holding, the attorney's fees award must also be reversed since Mumby is no longer a "successful claimant." *See* Alaska R.App.P. 508(g)(2). The Board's decision that laches should not apply in this case is also supported by the record.[1]

REVERSED.

1. The Board found that Mumby suffered no undue prejudice as a result of Grasle's delay in controverting the claim. Mumby notes that Grasle paid for the treatment of his hypertension for over a decade. He then argues that had he known that Grasle would challenge the cause of his hypertension back in the 70's he could have accumulated the medical evidence that would demonstrate his entitlement to benefits. He also argues that the testimony of his own physician, Dr. Morgan, suffered as a result of the long delay because he could not clearly remember important events.

The Board responded to these arguments by noting that their decision was based on the expertise of the doctors interpreting the medical record. The Board's decision stated that "[t]he problem is not in the availability of evidence but the interpretation thereof." Mumby could have produced an expert in hypertension at the hearing, rather than relying solely on Dr. Morgan, a general practitioner. Furthermore, the essence of Dr. Kloster's testimony was that the signs of chronic hypertension were evident *before* the injury; Mumby could not very well have had additional tests done for this crucial time period.