NORCON, INC. and Eagle Pacific
Insurance Co., Appellants,

v.

ALASKA WORKERS' COMPENSATION
BOARD and Ellen Siebert,
Appellees.

No. S–5599.

Supreme Court of Alaska.

Sept. 9, 1994.

Karen L. Russell and Joseph M. Cooper, Russell, Tesche & Wagg, Anchorage, for appellants.

Joseph A. Kalamarides, Kalamarides & Associates, Anchorage, for appellees.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. pro tem.[*]

*ORDER*

On consideration of Appellees' motion for reconsideration, filed on July 1, 1994, treated by this court as a petition for rehearing,

IT IS ORDERED:

1. Opinion No. 4097 published on July 1, 1994, is WITHDRAWN.

2. The petition for rehearing is GRANTED.

3. Opinion No. 4119 is issued on this date in its place.

Entered by direction of the Court at Anchorage, Alaska, on September 9, 1994.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.[*]

[*] Sitting by assignment made pursuant to article

*OPINION*

COMPTON, Justice.

Norcon, Inc. and its workers' compensation carrier, Eagle Pacific Insurance Co. (Norcon), appeal from a superior court decision affirming an Alaska Workers' Compensation Board (Board) determination that Kenneth Siebert's sudden cardiac death was work related. We reverse.

I. *FACTUAL AND PROCEDURAL BACKGROUND*

Kenneth Siebert was hired by Norcon in June 1989 as a crane operator in connection with the Exxon Valdez oil spill cleanup. He would pick up dumpsters with a crane and empty their contents into a containment pit. The job was temporary and scheduled to end in the fall. Originally Kenneth was hired for eight weeks on and two weeks off. However, he worked seven days a week, twelve hours a day, without any vacations.

During his employment with Norcon, Kenneth resided in a "man camp" which was located approximately four and one half miles from Valdez. There was conflicting testimony concerning the amount of rest and relaxation time available to Kenneth. According to Ellen Siebert, Kenneth's wife, Kenneth believed that he would not be hired back if he took any time off for rest and relaxation. Mr. Gene Fontenot, Norcon's superintendent of support services, testified that rest and relaxation was offered to everyone, and that if someone did not take some after eight weeks, he or she was encouraged to do so. Ellen testified that Kenneth told her on occasion that he was very tired, but that he wanted to stay on until the job wound down. Kenneth's roommate, Robert Netherton, testified that although Kenneth complained occasionally of being tired, he did not do so any more than anyone else. He further testified that Kenneth never indicated to him that he was exhausted, nor did Kenneth appear as if he was exhausted.

On the morning of September 29, 1989, Kenneth got up, showered, shaved, and exchanged pleasantries with Netherton, who

IV, section 16 of the Alaska Constitution.

remained in bed. A short time later Netherton heard a thud. He rolled over in bed and saw that Kenneth was on the floor. Kenneth apparently suffered ventricular fibrillation, which resulted in sudden cardiac death. Emergency medical technicians succeeded in restoring his heart beat. However, Kenneth did not regain consciousness. He remained in a coma until he died in December 1989.

Kenneth was fifty-seven years old. He was a light drinker and had smoked cigarettes. Ellen testified that Kenneth had not seen a doctor in twenty years or more. No autopsy was performed.

In January 1990, Norcon filed a report of occupational injury with the Board. Norcon's representative filed a notice of controversion. Later Ellen filed an application for adjustment of claim. Norcon filed an answer denying entitlement to benefits. Eventually the Board issued a decision and order finding that Kenneth's death was compensable under the Alaska Workers' Compensation Act. The Board also awarded Ellen's counsel attorney's fees.

Norcon appealed the Board's decision to the superior court. AS 22.10.020(d); Alaska R.App.P. 601(a). It also filed a motion for stay pending appeal, which the superior court granted.

 The superior court affirmed the Board's decision and awarded Ellen's counsel attorney's fees and costs on appeal. This appeal followed.

## II. DISCUSSION

### A. ASSUMING THE PRESUMPTION OF COMPENSABILITY PROPERLY ATTACHED, DID NORCON SUCCESSFULLY REBUT THE PRESUMPTION? [1]

Norcon argues that the Board was presented with overwhelming evidence from both Dr. Allan and Dr. Scheidt that rebutted the presumption of compensability. Norcon claims that the testimony established that there was no connection between Kenneth's death and his work. In addition, Norcon contends that the superior court erred by

---

1. Alaska Workers' Compensation Act, AS 23.30.-005—.270, creates a presumption that a claim for compensation falls within its provisions. AS 23.-30.120(a). This statute provides in part:

 (a) In a proceeding for the enforcement of a claim for compensation under [the Alaska Workers' Compensation Act] it is presumed, in the absence of substantial evidence to the contrary, that
 (1) the claim comes within the provisions of [the Alaska Workers' Compensation Act];
 To establish the presumption of compensability, Ellen relied on her testimony that Kenneth said he was exhausted from the job, and on the testimony of two of Norcon's witnesses—Dr. Allan and Dr. Scheidt. Ellen also contended before the Board that the presumption was met because Kenneth's sudden cardiac death occurred at a remote site. She utilizes the "remote site" theory because Kenneth's sudden cardiac death did not occur while he was working, but rather while at his living quarters before leaving for work. She concludes that because Norcon provided food and shelter, Kenneth was at a "remote site." She contended that had Kenneth's ventricular fibrillation occurred in Anchorage, he would have had a better chance of recovery, because he could have been defibrillated earlier. Evidence was presented at the hearing concerning the timing of medical attention given. However, the Board did not address this issue. It determined that the claim was compen-

sable based on its decision that Dr. Allan's and Dr. Scheidt's testimony was "inconclusive, contradictory, and doubtful."
 We conclude that the "remote site" theory is inapplicable in this case. The principle behind the "remote site" theory is that because a worker at a remote site is required, as a condition of employment, to eat, sleep and socialize on the work premises, activities normally divorced from his work become part of the working conditions to which the worker is subjected. *Anderson v. Employers Liab. Assurance Corp.*, 498 P.2d 288, 290 (Alaska 1972) (remote site employee, subject to call at any time, injured in a pole-climbing contest on the employer's premises). "For these reasons many courts have concluded that when an employee is working in a remote area far from family and friends and the normal recreational outlets available to the working man, his recreational activities become an incident of his employment." *Id.* (footnote omitted). *See also, Sokolowski v. Best W. Golden Lion Hotel*, 813 P.2d 286, 291 n. 4 (Alaska 1991) (court distinguishes the remote site situation from the more usual employment where employees have fewer constraints in their choices for after-work activity). Getting ready for work is not an activity choice made as a result of limited activities offered at a remote site. It is an activity that most employees engage in before they go to work, regardless of their location. Therefore, it does not fall within the parameters of the "remote site" theory.

enhancing the alternative test for establishing that the presumption was rebutted.

Ellen contends that the presumption was not rebutted because the Board found Dr. Allan's testimony ambiguous and Dr. Scheidt's testimony inconclusive.

In *Grainger v. Alaska Workers' Compensation Board*, 805 P.2d 976 (Alaska 1991), we stated that an employer can overcome the presumption of compensability by providing substantial evidence that either: "(1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial cause of the disability; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability." *Id.* at 977. "We have held that substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Fireman's Fund Am. Ins. Cos. v. Gomes*, 544 P.2d 1013, 1015 (Alaska 1976) (quoting *Thorton v. Alaska Workmen's Compensation Bd.*, 411 P.2d 209, 210 (1966)). Whether the amount of evidence is substantial is a legal question. *Id.* Therefore, we must independently examine an employer's evidence to determine whether the employer has successfully rebutted the presumption of compensability. *Veco, Inc. v. Wolfer*, 693 P.2d 865, 869 (Alaska 1985).

In *Big K Grocery v. Gibson*, 836 P.2d 941 (Alaska 1992), we held that "[i]t has always been possible to rebut the presumption of compensability by presenting a qualified expert who testifies that, in his or her opinion, the claimant's work was probably not a substantial cause of the disability." *Id.* at 942. "[S]uch testimony is affirmative evidence that an injury is not work connected." *Id.* "If medical experts have ruled out work-related causes for an employee's injury, then *Wolfer* and *Grainger* do not require that these experts also offer alternative explana-

tions." *Childs v. Copper Valley Elec. Ass'n*, 860 P.2d 1184, 1189 (Alaska 1993).[2]

The Board found that Dr. Scheidt's testimony was ambiguous and that Dr. Allan's testimony was inconclusive with respect to the work-relatedness of Kenneth's sudden cardiac death. The Board then concluded that Norcon "failed to produce medical testimony which fulfills the requirements set forth in *Grainger* as to substantial evidence rebutting the presumption." The superior court affirmed the Board's decision. The court cited *Grainger* as authority for the proposition that because the Board did not *accept* the alternative explanation for the cause of the employer's death, the presumption of compensability had not been overcome.

We agree that deference should be given to the Board's determination of a witnesses credibility. AS 23.30.122.[3] However, we find it necessary to clarify that any weighing of testimony does not take place at the rebuttal stage. Rather, the weight to be accorded the doctors' testimony must take place after a determination of whether the presumption had been overcome. *See Wolfer*, 693 P.2d at 869 ("the presumption [of compensability] shifts only the burden of production and not the burden of persuasion").

Dr. Allan and Dr. Scheidt provided evidence, in their depositions and at the hearing, that a reasonable person might accept as adequate to support the conclusion that Kenneth's death was not work related. Dr. Scheidt testified that working long hours is not recognized to be a risk factor for sudden cardiac death. Additionally, he stated that "I do not think there's any reasonable possibility that the two are related." Dr. Allan testified that he did not think that Kenneth's work was a substantial factor, either directly or indirectly, in bringing about

2. In fact, Norcon contends that the presumption of compensability was rebutted by Dr. Scheidt's alternative explanation for Kenneth's death. Dr. Scheidt opined that Kenneth had what is the number one cause of death in the United States—atherosclerosis.

3. AS 23.30.122 provides:

The board has the sole power to determine the credibility of a witness. A finding by the board concerning the weight to be accorded a witness's testimony, including medical testimony and reports, is conclusive even if the evidence is conflicting or susceptible to contrary conclusions. The findings of the board are subject to the same standard of review as a jury's finding in a civil action.

his cardiac death. Therefore, we conclude that Norcon successfully rebutted the presumption of compensability.[4]

### B. DID ELLEN PROVE THE ELEMENTS OF HER CASE BY A PREPONDERANCE OF THE EVIDENCE?

The Board states:

Even if we considered in isolation Dr. Allen's [sic] testimony and Dr. Scheidt's hearing testimony only, which we would find adequate to overcome the presumption, we would still conclude Employee's death is compensable. Once the presumption is overcome, we would weigh the evidence. We would review all the testimony given by Dr. Allen [sic] and Dr. Scheidt. We would find it inconclusive, contradictory, and doubtful. We would resolve this doubt in Employee's favor and conclude the death is compensable.

Norcon contends that the Board's alternative holding is incorrect. It claims that rather than requiring Ellen to produce *any* medical evidence that Kenneth's sudden cardiac death was work related, the Board appeared to rely on what it perceived to be Norcon's failure to prove that it was not.

Ellen argues that the Board chose not to rely on the testimony of either of the doctors. She concludes that the only believable evidence supported compensability of the claim.

■ After a determination that the presumption of compensability has been successfully rebutted, the presumption "drops out" and the employee must prove his or her case by a preponderance of the evidence. *Wolfer*, 693 P.2d at 870. "Upon reviewing a determination that the employee has or has not met that burden, the court must apply the 'substantial evidence' test...." *Id.* "[W]hile the judiciary may not reweigh the evidence before the Board, neither may it abdicate its reviewing function and affirm a Board deci-

sion that has only extremely slight supporting evidence." *Hoth v. Valley Constr.*, 671 P.2d 871, 874 (Alaska 1983) (quoting *Black v. Universal Servs., Inc.*, 627 P.2d 1073, 1076 (Alaska 1981)).

■ We conclude that the Board's holding that Ellen would have prevailed even had the presumption of compensability been rebutted is in error. There is no substantial evidence to support a holding that Kenneth's death resulted from his employment with Norcon. In fact, Ellen presented no medical evidence showing a connection between the two. "Two factors determine whether expert medical evidence is necessary in a given case: the probative value of the available lay evidence and the complexity of the medical facts involved." *Wolfer*, 693 P.2d at 871.

The only lay evidence before the Board which supported the finding that Kenneth was "exhausted" was Ellen's testimony that during phone conversations, Kenneth would tell her that he was tired, and that the last time she spoke with him he told her that he was extremely tired. Netherton, Kenneth's roommate, testified that Kenneth did not complain of being tired more than anyone else and that he did not appear to be exhausted. Ellen's testimony does not appear to have any probative value connecting fatigue to sudden cardiac death. The complexity of the cause and effect relationship in sudden cardiac death necessitates presentation of medical evidence.

Ellen also relies on the deposition testimony of both Dr. Allan and Dr. Scheidt, Norcon's witnesses, to establish the elements of her claim. Doctor Allan is a clinical psychologist who specializes in cardiac patients. For the past ten years his practice has centered on psychological factors in cardiac death. When discussing his view on an individual's responsibility to take time off when they are tired, he was asked, "Are you expressing an opinion here that Mr. Siebert

---

4. The dissent focuses on the experts' uncertainty regarding causes of sudden cardiac death. The dissent reasons that because there is medical uncertainty regarding causes of sudden cardiac death, an expert's opinion that a specific event *was not a substantial cause* in the employee's sudden cardiac death should not be given any

weight. If we accept the dissent's reasoning, an employer would be unable to rebut the presumption of compensability of work relatedness whenever an employee suffers sudden cardiac death. We decline to adopt such an irrebuttable presumption.

was tired to the point that his tiredness was a significant factor in bringing about his death?" Dr. Allan replied, "That's a very tough question to answer, you know." He then told of a very driven and over-worked executive who had a heart attack after a day of sailing. Dr. Allan explained that "there really is not the database to answer that kind of question, other than by this case note." However, a few questions later, Dr. Allan was asked, "In Mr. Siebert's case, was his employment either directly or indirectly, by causing tiredness, a substantial factor in bringing about his death, in your opinion?" Dr. Allan responded, "I would say, no."

Dr. Scheidt, a cardiologist, did comment that he found it unusual that Kenneth worked as much as he did. He stated that while it was possible that long hours could result in heightened sympathetic activity, it is not a generally recognized risk factor in sudden cardiac death. Additionally, he also stated that "the chronic stress that there's just sort of a generalized free floating increase in sympathetic activity and that that would ... be operative the next day or after a good night's sleep, that's never really been documented."

When asked if Kenneth would have suffered his cardiac arrest when he did, had he not been working as he was on the Valdez job, Dr. Scheidt replied,

> Well that's a very difficult question to answer. I mean, in the first place, I hardly can give you a psychological profile of Mr. Siebert ... because it's from what few comments that other people gave. And, of course, none of the medical people ever talked to Mr. Siebert.
>
> In addition, I feel very uncomfortable because in asking the question, you seem to be presuming that medical science has made connections between psychological factors or job stress or that sort of thing and cardiac arrest. This is an area of active ongoing research.
>
> ... Nothing in this area is proven.
>
> . . . .
>
> There simply is not enough evidence for us to link psychological factors or stress to coronary disease or sudden death. And

therefore, I can't link it in Mr. Siebert either.

When asked whether Kenneth's work was a substantial factor in bringing about his cardiac arrest, Dr. Scheidt responded,

> It is impossible to state that. The cause of sudden cardiac death ... is unknown. And it is unknown in Mr. Siebert's case. It is unknown in general. It is associated with coronary atherosclerosis that has a number of associations which everybody knows about, the risk factor.
>
> But the [cause of] sudden death ... that occurs ... in the course of coronary disease, ... is unknown. And in the vast majority of cases where we look for unusual out of the ordinary events, we don't find them.

No other expert witnesses testified concerning a connection, or lack thereof, between fatigue and sudden cardiac death.

The Board erred in its determination that Ellen would have prevailed even if Norcon had rebutted the presumption of compensability. This conclusion is not supported by substantial evidence. Although we will not reweigh the evidence on appeal, to support an award of compensation in a highly technical medical case such as this, more needs to be presented than an unexplained case note and a statement by a cardiologist that working so many hours is unusual. The quantum of evidence presented does not meet the substantial evidence test to support the Board's determination of a connection between Kenneth's death and his employment. *See, e.g., Grainger,* 805 P.2d at 979 ("We will reverse a Board decision when we 'cannot conscientiously find that the evidence supporting that decision is substantial.'") (quoting *Delaney v. Alaska Airlines,* 693 P.2d 859, 864 n. 2 (Alaska 1985)). Therefore, the claim for compensation is denied.

## C. ATTORNEY'S FEES

■ Norcon correctly contends that because the decisions of both the Board and the superior court must be reversed, the awards of attorney's fees need also be reversed. AS 23.30.145(a) (the board may direct fees for legal services "only on the amount of com-

pensation controverted and *awarded"*) (emphasis added); Alaska R.App.P. 508(g)(2) ("full reasonable attorney's fees will be awarded to a *successful claimant"*) (emphasis added); *W.R. Grasle Co. v. Mumby*, 833 P.2d 10, 11 (Alaska 1992) (superior court's award of attorney's fees reversed because the claimant was no longer a "successful claimant").

## III. *CONCLUSION*

Because the Board's determination is not supported by substantial evidence, the decision of the superior court is REVERSED. The superior court is directed to remand the case to the Board, with instructions to conduct further proceedings it deems appropriate, not inconsistent with this opinion. Because Ellen is no longer a successful claimant, the awards of attorney's fees are also REVERSED.

RABINOWITZ, Justice, dissenting.

RABINOWITZ, Justice, dissenting.

I dissent from the court's conclusion that Norcon rebutted the presumption of compensability. Norcon's medical evidence was inconclusive as to whether Siebert's death was work related. Therefore, I would affirm the Board's determination in this case.

Substantial evidence rebutting the presumption of compensability consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Thornton v. Alaska Workmen's Compensation Bd.*, 411 P.2d 209, 210 (Alaska 1966), *quoted in Grainger v. Alaska Workers' Compensation Bd.*, 805 P.2d 976, 977 n. 1 (Alaska 1991). Generally, the presumption of compensability is not overcome when there is a profound lack of information regarding the cause of an employee's death. *See Fireman's Fund Am. Ins. Cos. v. Gomes*, 544 P.2d 1013, 1017 (Alaska 1976) (unexplained shooting); *Employers Commercial Union Co. v. Libor*, 536 P.2d 129, 132 (Alaska 1975) (herniated disc).

*Libor*'s facts are especially pertinent to the case at bar. The employee received treatment for a herniated disc a few weeks after a falling rock struck him in the lower

back at his worksite. 536 P.2d at 129. He sought workers' compensation, and the employer controverted his claim. *Id.* at 130. The two medical experts who testified were unable to state with reasonable certainty that the back injury was work related, but they did not exclude a causal connection. *Id.* at 132. One of the doctors stated that he could not "make a definite statement" linking the on-the-job injury with the subsequent herniated disc, although they "could have" been connected. *Id.* at 130. He went on to state, "I see no reason why there could not be a relationship between the two injuries but it would be almost impossible for me to make the causal connection." *Id.* The other doctor stated that the on-the-job injury "cannot, with a reasonable degree of medical certainty, be said to be either the cause of or to have precipitated a herniated disc." *Id.* We noted, however, that the other doctor "did not positively exclude a causal connection; he was merely unable to establish it." *Id.* at 132. Accordingly, we held that the combination of the employee's lay testimony and the inconclusive medical testimony constituted substantial evidence that the injury was work related, and that the Board could have concluded that the employer had not overcome the presumption of compensability. *See id.*

Instead of looking to the *Libor* rule, here the court relies on two recent decisions, *Childs v. Copper Valley Electric Ass'n*, 860 P.2d 1184 (Alaska 1993), and *Big K Grocery v. Gibson*, 836 P.2d 941 (Alaska 1992). The court culls the correct legal rule from these cases: "An employer has always been able to rebut the presumption of compensability with an expert opinion that 'the claimant's work was probably not a substantial cause of the disability.'" *Childs*, 860 P.2d at 1189 (quoting *Gibson*, 836 P.2d at 942). Nonetheless, I believe the court is mistaken in concluding that Norcon met this burden.

*Childs* and *Gibson* were cases in which an employer's medical experts ruled out a link between an employee's job and his or her injury. Practically speaking, such testimony need not be expressed in absolute or unqualified terms. When experts examine the evidence and become fairly certain about causation, we do not construe their testimony as

inconclusive. Instead, we attribute the lack of absolute certainty to the tendency of the scientific mind to avoid unqualified statements on causation. *See Childs,* 860 P.2d at 1189; *Gibson,* 836 P.2d at 942; 3 Arthur Larson, *The Law of Workmen's Compensation* § 80.32, at 15–834 through –835 (1993).

The opinions of Drs. Scheidt and Allan more closely resemble the medical testimony in *Libor* than the testimony in *Childs* or *Gibson.* Although Dr. Scheidt expressed conjectural doubt that Siebert's death was work related, he also stated that there is a great deal of uncertainty regarding the causes of heart failure. He also discussed a study that found correlations between lifestyle changes, including working hours, and sudden cardiac death. In regard to the literature on the connection between stress and ventricular arrhythmia, he indicated that there were some studies showing a connection, and some finding none:

> There are some studies that show [psychological stress to be a trigger for ventricular arrhythmia]. But exactly in whom and exactly—and again, you know, every study sort of has its own triggers. One has long working hours and another has depression and another has something else. It's a very confusing literature that doesn't permit you to come to any definite conclusion. But, your question, are there some studies that show a relationship, yes.

The conclusion of Dr. Scheidt's deposition testimony is similarly ambiguous:

> Most cases that are very common that occur in men just like Mr. Siebert, *they occurred for seemingly random and inexplicable reasons.* And since so many other cases occur for no reason, since the medical literature in our experience gives us no particular reason, I have to conclude that also in Mr. Siebert's case ... there is no clear reason and no reason to believe that it is related to his job stress.

(Emphasis added).

Dr. Allan's testimony is no more conclusive. When asked whether exhaustion was a significant factor in Siebert's death, Dr. Allan stated that "[t]here really is not the database to answer that kind of question."

The majority acknowledges that Norcon's burden was to provide substantial evidence that "directly eliminates any reasonable possibility that employment was a factor in causing the disability." Inconclusive medical testimony emphasizing a lack of data does not satisfy that burden. Therefore, I would affirm the determination of the Board.