**SAFEWAY, INC., Petitioner,**

v.

**Cynthia D. MACKEY, Respondent.**

**No. S–7991.**

Supreme Court of Alaska.

Oct. 9, 1998.

Patricia L. Zobel, Deirdre D. Ford, DeLisio, Moran, Geraghty & Zobel, Anchorage, for Petitioner.

Charles W. Coe, Anchorage, for Respondent.

Before MATTHEWS, C.J., and COMPTON, FABE and BRYNER, JJ.

*OPINION*

MATTHEWS, Chief Justice.

## I. *INTRODUCTION*

Cynthia Mackey sought workers' compensation benefits for her fibromyalgia, claiming that it was caused by her employment with Safeway, Inc., and by her work-related tendinitis and knee injuries. The Workers' Compensation Board denied Mackey benefits after the date that she was diagnosed with fibromyalgia, holding that Safeway had rebutted the presumption of compensability by providing substantial evidence that Mackey's fibromyalgia was not work-related, and that Mackey had failed to prove by a preponderance of the evidence that it was work-related. The Board also denied Mackey continuing benefits for her tendinitis after the date that she was diagnosed with fibromyalgia, holding that Mackey had failed to prove by a preponderance of the evidence that her continuing condition was caused by work-related tendinitis rather than by fibromyalgia.

The superior court reversed the Board's denial of benefits for Mackey's fibromyalgia, holding that Safeway had not rebutted the presumption of compensability. It held that the medical testimony tending to rebut the presumption was speculative and could not be substantial evidence because the doctors had testified that the causes of fibromyalgia are unknown. Since the court held that Mackey should be compensated for her fibromyalgia based on the presumption, it did not reach the issues of whether Mackey had proved by a preponderance of the evidence that her fibromyalgia was work-related, or alternatively, whether her continuing condition was caused by work-related tendinitis.

We granted Safeway's petition for review from the superior court's decision and now reverse. We hold that Safeway presented

substantial evidence to rebut the presumption of compensability, and further hold that the Board's decisions that Mackey had failed to prove by a preponderance of the evidence that her fibromyalgia was work-related or that her continuing condition was work-related tendinitis are supported by substantial evidence.

## II. *FACTS AND PROCEEDINGS*

Cynthia Mackey worked for Safeway from August 1977 through August 1991 as a checker and a stocker. During that time, she injured her right knee twice and also developed tendinitis in her shoulders. She received workers' compensation benefits for these injuries.

After she stopped working, Mackey was diagnosed with fibromyalgia.[1] She sought workers' compensation benefits for her fibromyalgia, claiming that it was caused by her employment with Safeway and by her previous work-related injuries. A summary of Mackey's injuries is necessary to understand her claim that her fibromyalgia was work-related.

In 1981 Mackey tore the cartilage in her right knee while working and had surgery to remove the cartilage. She missed work for about four months, and Safeway paid her temporary total disability (TTD) and permanent partial disability (PPD) benefits.

In 1986 Mackey was treated for pain in her right knee and pain in her left shoulder, which she claimed hurt when she stocked items at work. She was diagnosed with osteoarthritis in her knee, and rotator cuff and bicipital tendinitis in her left shoulder. Mackey again missed work for about four months, and Safeway paid her TTD benefits.

In May 1990 Mackey again injured her right knee at work. In June she was diagnosed with post-traumatic arthritis in her right knee and again had knee surgery. Safeway considered this to be a new injury and awarded Mackey TTD benefits from May through July. Mackey returned to work in August, but only worked about twenty-five hours per week, performing mainly sedentary office work and some checking.

In April 1991 an Employer's Medical Evaluation (EME) was performed on Mackey's right knee. The doctors diagnosed Mackey with severe degenerative arthritis of the right knee, which had been caused primarily by the 1981 accident and temporarily aggravated by the 1990 accident.

Mackey then began having additional problems with her shoulders. In June 1991 she was treated in an emergency room for shoulder pain. In July she was treated for left hip pain, which had begun when she twisted away from the checkout stand. She also complained of pain in her right shoulder and generalized soreness throughout her body.

In August Mackey first saw Dr. Armstrong, a rheumatologist. He diagnosed her with tendinitis in both shoulders, and advised her not to return to work. She stopped working, and Safeway began paying TTD benefits for her tendinitis that month.

At the time she stopped working, Mackey complained of pain in her hips and shoulders; within six months of leaving Safeway she began to experience pain in various joints and muscles all over her body. This included pain in her left hip, shoulders, neck, face, and back. She described her pain as traveling throughout her body and hitting without warning.

Dr. Armstrong referred Mackey to Dr. Fu, who diagnosed her with myofascial pain syndrome in January 1992. She also continued to see Dr. Armstrong. On March 23, 1992, Dr. Armstrong first diagnosed Mackey with fibromyalgia. He found her to be medically stable in May.

In June Dr. Staver, an orthopedist, performed an EME on Mackey. He diagnosed her with bilateral impingement syndrome and tendinitis, and found her to be medically stable. He felt her shoulder problems were related to her work. Safeway continued paying TTD benefits for Mackey's tendinitis through June 10, 1992, and paid benefits

---

1. Fibromyalgia is a disease in which the patient has musculoskeletal complaints of pain through- out the body, but does not exhibit any medically objective symptoms.

under AS 23.30.041(k) from October 1992 to June 1993.

In December 1992 Dr. Armstrong informed Safeway that in his opinion, Mackey's shoulder condition was a "dominant contributing factor to the development of fibromyalgia which is preventing her from returning to gainful employment."

In April 1993 Safeway arranged an EME in San Francisco to evaluate Mackey's current condition. The panel consisted of Dr. Weber, a rheumatologist; Dr. Gunderson, an orthopedic specialist; Dr. Petrakis, a psychiatrist; and Dr. Wilson, a specialist in physical medicine. Dr. Weber diagnosed Mackey with fibromyalgia, but stated to a reasonable medical certainty that it was not related to her employment. Dr. Petrakis agreed that it was more probable than not that Mackey's employment was not a cause of her fibromyalgia.

Based on this evaluation, Safeway controverted Mackey's claim for fibromyalgia in June 1993, on the ground that it was not a work-related injury.[2] The Workers' Compensation Board sent Mackey for a Second Independent Medical Examination (SIME) with a panel consisting of Dr. Krengel, an orthopedic surgeon; Dr. Carlin, a rheumatologist; Dr. Chinn, a psychiatrist; and Dr. Worsham, a specialist in physical medicine and rehabilitation. Dr. Carlin and Dr. Worsham stated that on a more-probable-than-not basis, Mackey's fibromyalgia was not related to her employment or to any injury that she received at work.

The Board held that Mackey had raised the presumption of compensability based on Dr. Armstrong's testimony that Mackey's tendinitis had metastasized into fibromyalgia; however, Dr. Weber's testimony that Mackey's fibromyalgia was not work-related had overcome that presumption. The Board also held that Mackey had not proved by a pre-

ponderance of the evidence that her fibromyalgia was caused by her employment. Further, it held that Mackey was not entitled to TTD benefits for her bilateral tendinitis after March 23, 1992, the date that Dr. Armstrong had diagnosed her with fibromyalgia.

Mackey appealed the Board's denial of benefits for her fibromyalgia, or alternatively for her continuing tendinitis, to the superior court. The court reversed the Board, remanding with instructions to award benefits for Mackey's fibromyalgia. It held that Safeway failed to rebut the presumption of compensability because the medical opinions that Mackey's condition was not work-related were speculative as a matter of law since the doctors had testified that the causes of fibromyalgia are unknown.

We granted Safeway's petition for review. The superior court stayed its decision pending resolution of this petition.

### III. DISCUSSION [3]

Alaska Statute 23.30.120(a)(1) creates a presumption that a claim for workers' compensation is compensable. This presumption extends to the question of whether a disability is work-related. See *Gillispie v. B & B Foodland*, 881 P.2d 1106, 1109 (Alaska 1994). Application of this presumption includes a three-step process. See *id.* at 1109–11. First, to raise the presumption of compensability, the employee must establish a "preliminary link" between his or her disability and the employment. *Id.* at 1109.[4]

Second, the employer has the burden of overcoming the presumption by presenting substantial evidence that the injury was not work-related. See *id.* An employer can satisfy this burden by providing substantial evidence that either: "(1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial

**2.** Safeway never contested that Mackey had fibromyalgia.

**3.** We will not defer to a decision of the superior court acting as an intermediate court of appeal. See *Williams v. State, Dep't of Revenue*, 938 P.2d 1065, 1069 (Alaska 1997). Instead, we independently review the merits of the underlying administrative decision. See *id.*

**4.** Since Safeway did not appeal the Board's conclusion that Mackey had presented sufficient evidence to raise the presumption of compensability, we will assume that the evidence was sufficient to support this finding. See *Gillispie*, 881 P.2d at 1109.

cause of the disability; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability." *Id.* (quoting *Grainger v. Alaska Workers' Compensation Bd.*, 805 P.2d 976, 977 (Alaska 1991)). "It has always been possible to rebut the presumption of compensability by presenting a qualified expert who testifies that, in his or her opinion, the claimant's work was probably not a substantial cause of the disability." *Big K Grocery v. Gibson*, 836 P.2d 941, 942 (Alaska 1992).

■ Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gillispie*, 881 P.2d at 1109 (quoting *Grainger*, 805 P.2d at 977 n. 1). The issue of whether there is substantial evidence to overcome the presumption is a question of law which this court will independently examine. *See Norcon, Inc. v. Alaska Workers' Compensation Bd.*, 880 P.2d 1051, 1054 (Alaska 1994). In deciding whether the presumption has been overcome, we will not weigh the testimony or the credibility of the witnesses; instead, the evidence tending to rebut the presumption is examined by itself and is not compared to conflicting evidence in the record. *See id.*

■ Third, once the employer produces substantial evidence to rebut the presumption of compensability, the presumption drops out and the employee must prove the elements of his or her claim by a preponderance of the evidence. *See Gillispie*, 881 P.2d at 1111. In reviewing the Board's decision on this issue, we determine whether the Board's findings are supported by substantial evidence. *See id.* We will not reweigh the evidence or choose between competing inferences from the evidence. *See Norcon*, 880 P.2d at 1055. Instead, we are limited to determining whether there is substantial evidence in the entire record which supports the Board's decision. *See Gillispie*, 881 P.2d at 1111. The test here is whether based on the whole record a reasonable mind could accept a decision of non-compensability. *See Black v. Universal Servs., Inc.*, 627 P.2d 1073, 1075–76 (Alaska 1981).

**A. Safeway Rebutted the Presumption of Compensability by Presenting Substantial Evidence That Mackey's Fibromyalgia Was Not Work–Related**

■ Safeway argues that the medical testimony of the doctors from the EME and SIME panels, especially Dr. Weber's testimony, rebutted the presumption of compensability because it established to a reasonable medical certainty that Mackey's work was not a substantial factor in the development of her fibromyalgia. Mackey, however, asserts that the superior court correctly held that the medical testimony was not substantial, because the doctors admitted that any theory on causation of fibromyalgia was speculative.

The Board relied mainly on Dr. Weber's testimony to rebut the presumption of compensability. Dr. Weber testified that, in his opinion, based on a reasonable medical probability, Mackey's employment was not a substantial factor in her development of fibromyalgia. He stated that she "absolutely" would have developed fibromyalgia regardless of whether she had worked at Safeway.[5]

However, Dr. Weber also stated that the causes of fibromyalgia are unknown. He testified that any statement about causation was speculative, because no reliable information on causation exists. Further, he testified that the position of the American Rheumatism Association is that the cause of fibromyalgia is unknown.

Dr. Weber's testimony that Mackey's employment was not a substantial factor in her development of fibromyalgia is evidence that "directly eliminates any reasonable possibility that employment was a factor in causing the disability." *Gillispie*, 881 P.2d at 1109 (quoting *Grainger*, 805 P.2d at 977). It is also, to use the *Big K Grocery* formulation, an opinion of a qualified expert that "the claimant's work was probably not a substantial cause of the disability." *Big K Grocery*, 836 P.2d at 942. However, merely reciting the proper words as an opinion is not necessarily enough to rebut the presumption of compensability, because the employer must provide *substantial evidence* that the disabil-

5. Further, none of the other doctors on the EME or SIME panels who voiced opinion on the issue believed Mackey's fibromyalgia was work-related.

ity was not work-related. *See id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Gillispie,* 881 P.2d at 1109 (quoting *Grainger,* 805 P.2d at 977 n. 1). The dispositive question, therefore, is whether a reasonable person could accept Dr. Weber's opinion that Mackey's employment was not a substantial factor in causing her fibromyalgia even though he admitted that the causes of fibromyalgia are unknown.

This question is controlled by our decision in *Norcon,* where we held that medical testimony was sufficient to overcome the presumption that the claimant's heart attack was work-related, even though one doctor testified that the causes of heart attacks are unknown. *See Norcon,* 880 P.2d at 1054, 1056. One doctor testified that working long hours, as the plaintiff in *Norcon* had done, is not recognized to be a risk factor for cardiac death. *See id.* at 1054. Another doctor testified that the claimant's work was not a substantial factor in causing the cardiac death. *See id.* at 1054–55.

Significantly, the court rejected the dissent's argument that this evidence was inconclusive because the causes of heart failure are unknown. *See id.* at 1055 n. 4; *see also id.* at 1057–58 (Rabinowitz, J., dissenting). The court emphasized that accepting this conclusion would create an "irrebuttable presumption" whenever the claimant suffers cardiac death. *Id.* at 1055 n. 4.[6]

Here, Dr. Weber testified that trauma and the development of fibromyalgia have not been reliably related. He also stated that work was probably not a substantial factor in the development of Mackey's fibromyalgia.

He based his opinion on his experience and knowledge of the disease in general as well as on his knowledge of Mackey's work environment. He also rebutted the theories that Dr. Armstrong presented to link Mackey's work with her fibromyalgia.

This is the same type of medical testimony we relied on in *Norcon* to overcome the presumption of compensability. Determining that Dr. Weber's testimony was not substantial evidence to overcome the presumption merely because he also testified that the causes of fibromyalgia are unknown would create an irrebuttable presumption that fibromyalgia is work-related. We again "decline to adopt such an irrebuttable presumption." *Id.*

When considering all the medical testimony in the record which tends to rebut the presumption of compensability, a reasonable person could conclude that it was adequate to eliminate any reasonable possibility that work was a factor in causing Mackey's fibromyalgia. We thus hold that Safeway presented substantial evidence to rebut the presumption of compensability.

B. *The Board's Decision That Mackey Failed to Prove by a Preponderance of the Evidence That Her Fibromyalgia Was Work–Related Is Supported by Substantial Evidence* [7]

■ Mackey argues that the Board's decision that she failed to prove her fibromyalgia was work-related is not supported by substantial evidence. First, she argues that the Board should not have relied on the opinions of the doctors from the EME and SIME panels, because they did not have the

6. The court stated:
 The dissent focuses on the experts' uncertainty regarding causes of sudden cardiac death. The dissent reasons that because there is medical uncertainty regarding causes of sudden cardiac death, an expert's opinion that a specific event *was not a substantial cause* in the employee's sudden cardiac death should not be given any weight. If we accept the dissent's reasoning, an employer would be unable to rebut the presumption of compensability of work relatedness whenever an employee suffers sudden cardiac death. We decline to adopt such an irrebuttable presumption.

*Norcon,* 880 P.2d at 1055 n. 4.

7. The superior court did not reach the issue of whether Mackey had proved her claim by a preponderance of the evidence, because it determined that she should be compensated based on the presumption of compensability. Even though the court did not rule on this issue, the Board made findings on this issue. We find it appropriate to reach the issue since our review of the superior court's decision is de novo and since no interest would be served by remanding this issue to the superior court.

opportunity to perform in-depth examinations of Mackey.

In *Black v. Universal Services, Inc.*, 627 P.2d 1073, 1075–76 (Alaska 1981), we held that relying on one doctor's opinion to deny benefits was unreasonable where that doctor had no opportunity to examine the patient in any depth and disagreed with the opinions of her treating physicians. We have limited our holding in *Black*, however, by refusing to reverse the Board's decision where the reviewing physician's statement did not stand alone and was consistent with other evidence presented. *See Gillispie*, 881 P.2d at 1110 n. 3; *Childs v. Copper Valley Elec. Ass'n*, 860 P.2d 1184, 1189 (Alaska 1993). Further, we have never suggested that *Black* stands for a general rule that the opinion of a physician hired for litigation is not substantial evidence when it conflicts with that of treating physicians. The question in each case is whether based on the whole record "a reasonable mind" would accept the opinion "as adequate to support the Board's denial of compensation." *Black*, 627 P.2d at 1076.

Here, Dr. Armstrong is the only doctor who linked Mackey's fibromyalgia to her employment. All of the other doctors who gave an opinion on this issue stated that Mackey's fibromyalgia, more likely than not, was not work-related. Their opinions could reasonably be accepted by the Board.

 Mackey also argues that Dr. Armstrong's testimony that her condition progressed from tendinitis to fibromyalgia should have been given more weight by the Board, because he had the opportunity of observing Mackey as her fibromyalgia developed. The Board, however, has the sole authority to determine credibility and we will not reweigh the evidence in reviewing a Board's decision. *See* AS 23.30.122; *Childs*, 860 P.2d at 1189.

The Board was not required to accept Dr. Armstrong's theory of causation over the testimony of the other doctors who testified that her fibromyalgia was not · work-related. Safeway presented substantial evidence that the cause of the disease is unknown, and that

it is not linked with trauma. In addition, Dr. Weber discredited each of Dr. Armstrong's theories of causation. We therefore hold that the Board's decision that Mackey failed to prove her fibromyalgia was work-related is supported by substantial evidence.

C. *The Board's Decision That Mackey Failed to Prove by a Preponderance of the Evidence That Her Condition after March 23, 1992, Was Tendinitis Instead of Fibromyalgia Is Supported by Substantial Evidence* [8]

 The Board ruled that Mackey was only entitled to benefits for her tendinitis until March 23, 1992, the date that Dr. Armstrong diagnosed her with fibromyalgia. Mackey argues that if we hold that her fibromyalgia was not work-related, we should reverse the Board's determination that she is not entitled to continuing benefits for her tendinitis.

We hold, however, that the Board's decision that Mackey's condition after March 23, 1992, was caused by fibromyalgia instead of tendinitis is supported by substantial evidence. Dr. Weber indicated that fibromyalgia and tendinitis are mutually exclusive, because a patient with fibromyalgia cannot have any objective manifestations, while a patient with tendinitis should have objective manifestations like swelling or inflammation. In addition, Dr. Armstrong diagnosed Mackey with fibromyalgia on March 23. Both Dr. Carlin and Dr. Weber agreed that Mackey had developed fibromyalgia by that time. Dr. Armstrong testified that Mackey probably did not have tendinitis at the time of the hearing and that it was more likely that she had mainly fibromyalgia.

## IV. CONCLUSION

We hold that Safeway presented substantial evidence to rebut the presumption of compensability. In addition, we hold that the Board's decisions that Mackey failed to

---

8. The superior court also did not reach this issue because it determined that Mackey should be compensated for her fibromyalgia. For the rea-

sons expressed previously, we reach this issue. *See supra* note 7.

prove that her fibromyalgia was work-related or that her continuing disability was caused by work-related tendinitis were supported by substantial evidence on the whole record. We thus REVERSE the judgment of the superior court and REMAND with instructions to reinstate the Board's decision denying Mackey benefits after she was diagnosed with fibromyalgia.

EASTAUGH, J., not participating.